[No. C044894. Third Dist. Mar. 1, 2004.]

MICHAEL E. BROWN, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
CYCLON CORPORATION et al., Real Parties in Interest.

## COUNSEL

The Law Office of Michael E. Brown and Michael E. Brown for Petitioner.

No appearance for Respondent.

Campeau, Goodsell & Smith and William J. Healy for Real Party in Interest Cyclon Corporation.

No appearance for Real Party in Interest Vortran Medical Technology, Inc.

## OPINION

**ROBIE, J.**—This case raises the question of how and where a conflict between a creditor claiming a judgment lien under Code of Civil Procedure[1] section 708.410 et seq. (sometimes the judgment lien statutes) and an

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

attorney claiming a contractual lien on the proceeds of the same judgment is to be resolved. Specifically, can an attorney lien claimant, over the objection of the judgment creditor, appear in the client's underlying action for the limited purpose of asserting his or her contractual lien and contesting the creditor's judgment lien? We conclude the answer to that question is "no," even if there is no dispute between the attorney and the client as to the validity or amount of the attorney lien. In the face of an objection by *any* party—including a judgment creditor in a judgment lien enforcement proceeding under section 708.470—the validity and amount of the attorney contractual lien can be established only in a separate action.

This does not mean, however, that a creditor with a judgment lien can defeat the potentially senior contractual lien of an attorney simply by filing an application for satisfaction of his or her judgment lien under section 708.470 before the attorney has litigated the validity and amount of his or her lien in another action. Because the trial court has discretion to grant an application under section 708.470, it may be an abuse of discretion for the court to do so before the attorney lien claim has been adjudicated.

In this mandamus case, the respondent trial court granted the application of a judgment creditor under section 708.470 to satisfy its lien from the judgment proceeds, despite opposition from a competing attorney lien claimant, because the court concluded the attorney was not a party to the client's action and had no right to intervene. While the respondent court was correct regarding the attorney's status in the client's action, it does not follow that the judgment creditor was necessarily entitled to the judgment proceeds before the attorney. Although the validity and amount of the attorney lien must be adjudicated in a separate action, the *potential* existence of a senior contractual lien on the judgment may well warrant denying the judgment creditor's application under section 708.470 at this juncture. However, that is a matter for the trial court to decide in the first instance in the exercise of its discretion under section 708.470, taking all applicable facts and circumstances into account. Because we cannot be assured the respondent court in this case actually exercised its discretion in that manner, we will issue a peremptory writ of mandate directing the court to vacate its order granting the judgment creditor's application under section 708.470 and to reconsider that application in the light of this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1990, Vortran Corporation (Vortran) brought an action against real party in interest Vortran Medical Technology, Inc., (VMT) on claims arising out of a licensing agreement between the parties. (We will refer to this as the VMT action.) While that action was pending, real party in interest Cyclon Corporation (Cyclon) prevailed in an arbitration against Vortran in another matter. As

a result of that arbitration, on April 19, 1994, a judgment was entered against Vortran and in favor of Cyclon for $230,285 (sometimes the Vortran judgment). Six days later, in the VMT action, a judgment was entered against VMT and in favor of Vortran for $123,297.08 (sometimes the VMT judgment). On April 27, 1994, Cyclon filed a notice of lien in the VMT action based on the Vortran judgment.

Both Vortran and VMT appealed the VMT judgment. While that appeal was pending, VMT filed for bankruptcy. In January 1995, the bankruptcy court confirmed VMT's plan of reorganization, which provided that VMT would have 10 years to pay the VMT judgment to Vortran and that VMT was to deposit monthly payments into a blocked account for that purpose. Distribution to Vortran from the account was to occur when and if VMT lost its cross-appeal against Vortran.

In July 1997, this court affirmed the VMT judgment. After Vortran's petition for review was denied, the remittitur issued in October 1997.

In early 1998, petitioner Michael E. Brown filed a motion in the VMT action seeking to establish priority among lien claimants. Apparently, he claimed a contractual lien on the proceeds of the VMT judgment as Vortran's attorney and sought an order establishing that his lien was senior to Cyclon's judgment lien, which was created with the filing of Cyclon's notice of lien in April 1994. The court denied Brown's motion without prejudice.

What happened during the next five years is a mystery on the record before us. In June 2003, however, Cyclon filed an application in the VMT action pursuant to section 708.470 for an order that Vortran's right to money under the VMT judgment be applied to satisfy Cyclon's judgment lien.

Brown, nominally acting in his capacity as attorney for Vortran, filed an opposition to Cyclon's application. In Vortran's opposition, Brown asserted he had an attorney contractual lien on the proceeds of the VMT judgment that was senior to Cyclon's judgment lien. Brown also asserted that because there was no dispute concerning any of the fees or costs he claimed, "there is no necessity to bring an independent action to determine the amount of the fees and costs owed or whether [Brown] has an attorney's lien on the proceeds of the judgment herein."

In reply, Cyclon contended the court should strike Vortran's opposition because Vortran's corporate powers had been suspended under Corporations Code section 2205 for failing to file an annual statement of information required by Corporations Code section 1502. Cyclon also contended the court did not have jurisdiction over Brown's lien claim because the validity of Brown's lien had to be determined in a separate, independent action.

Brown responded by filing an application to correct the previously filed opposition, claiming he did not intend to appear for Vortran and instead always intended to appear on his own behalf to assert his lien claim against the proceeds of the VMT judgment. Brown also filed, as an attorney lien claimant appearing pro se, a motion for an order determining the amount and priority of his lien and directing VMT to pay all sums held in the blocked account to him until his lien was satisfied.

The trial court tentatively denied Cyclon's application for satisfaction of its judgment lien and granted Brown's motions to correct his opposition to Cyclon's motion and to determine lien priority in his favor. After argument, however, the trial court changed its mind. Based on its rereading of two cases, *Cetenko v. United California Bank* (1982) 30 Cal.3d 528 [179 Cal.Rptr. 902, 638 P.2d 1299] and *Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168 [121 Cal.Rptr.2d 532] (discussed below), the court concluded Brown was "not a party [to the underlying action] and has no right to intervene. He must bring a separate independent action against [Vortran] to enforce [his] lien." Accordingly, the court denied Brown's motion to determine lien priority, struck what it now deemed was Vortran's opposition to Cyclon's application under section 708.470, and granted Cyclon's application, ordering that VMT apply all monies it owed to Vortran under the judgment to satisfy Cyclon's judgment lien.

On Brown's petition, we issued an alternative writ of mandate and stayed the trial court's orders.

## DISCUSSION

## I

*Judgment Liens Under Section 708.410 et seq.*

Under the judgment lien statutes, "[a] judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action or special proceeding may obtain a lien [on the rights of the judgment debtor to money or property under any judgment subsequently procured in the action or proceeding] to the extent required to satisfy the judgment creditor's money judgment." (§ 708.410, subd. (a).) To obtain a judgment lien under these statutes, "the judgment creditor shall file a notice of lien and an abstract or certified copy of the judgment creditor's money judgment in the pending action or special proceeding." (*Id.*, subd. (b).)

Although a judgment creditor with a judgment lien may seek to intervene in the action (§ 708.430, subd. (a)), intervention is not necessary to enforce the lien. For example, under section 708.470, any party to the action can apply for an order "that the judgment debtor's rights to money or property under the judgment be applied to the satisfaction of the [judgment] lien . . . as ordered by the court." (§ 708.470, subd. (a).) For purposes of an application under section 708.470, a judgment creditor is "deemed to be a party to the action or special proceeding" even without intervening. (§ 708.430, subd. (b).)

Here, Cyclon was a judgment creditor of Vortran by virtue of its April 19, 1994 judgment against Vortran. Based on that judgment, Cyclon obtained a lien on Vortran's right to money under the VMT judgment when it filed its notice of lien under the judgment lien statutes in the VMT action on April 27, 1994.

## II

### Attorney Contractual Liens

"A lien in favor of an attorney upon the proceeds of a prospective judgment in favor of his client for legal services rendered . . . may be created either by express contract . . . [citations] or it may be implied if the retainer agreement between the lawyer and client indicates that the former is to look to the judgment for payment of his fee [citations]." (*Cetenko v. United California Bank, supra,* 30 Cal.3d at p. 531.) "An attorney's lien is created and takes effect at the time the fee agreement is executed." (*Carroll v. Interstate Brands Corp., supra,* 99 Cal.App.4th at p. 1175.) "Unlike a judgment creditor's lien, which is created when the notice of lien is filed [citation], an attorney's lien is a 'secret' lien; it is created and the attorney's security interest is protected even without a notice of lien. [Citations.] An attorney may, however, choose to file a notice of lien in the underlying action, and the common practice of doing so has been held permissible and even advisable." (*Id.* at p. 1172.)

Here, we do not decide whether Brown has a valid contractual lien on the proceeds of the VMT judgment. We note, however, that Brown claims such a lien based on written fee agreements he allegedly entered into with Vortran in June and July 1992—almost two years before Cyclon obtained its judgment lien on Vortran's right to money under VMT judgment.

## III

### *Priority of Liens*

In *Cetenko*, our Supreme Court rejected the argument that a judgment lien "acquired pursuant to a statute has priority over a contractual lien." (*Cetenko v. United California Bank, supra,* 30 Cal.3d 528 at p. 534.) Instead, the court held that the rule of priority set forth in Civil Code section 2897 applies. (*Cetenko,* at p. 534, fn. 8.) That statute provides that, "[o]ther things being equal, different liens upon the same property have priority according to the time of their creation . . . ." (Civ. Code, § 2897.) Thus, an attorney contractual lien arising out of a contract entered into before the filing of a notice of lien under the judgment lien statutes has priority over the judgment lien. created by that filing. As the Supreme Court explained in *Cetenko,* "[p]ublic policy favors th[is] conclusion . . . . If an attorney's claim for a lien on the judgment based on a contract for fees earned prior to and in the action cannot prevail over the lien of a subsequent judgment creditor, persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered in the latest lawsuit. Such a result would be detrimental not only to prospective litigants, but to their creditors as well." (*Cetenko,* at p. 536.)

Here, if Brown's claim of a lien on the proceeds of the VMT judgment is valid, his lien has priority over Cyclon's lien. The question, however, is whether the trial court in the VMT action has the power to determine the validity of Brown's lien. We turn our attention to that question.

## IV

### *Enforcing Attorney Lien Claims by Separate Action*

"Appellate courts have consistently held that the trial court in the underlying action has no jurisdiction to determine the existence or validity of an attorney lien on the judgment. [Citations.] The trial court does have fundamental jurisdiction over the subject matter and over the parties. Nevertheless, because the attorney is not a party to the underlying action and has no right to intervene, the trial court acts in excess of its jurisdiction when it purports to determine whether the attorney is entitled to foreclose a lien on the judgment. [Citations.] Nor can the court entertain a motion to terminate the lien. [Citation.] After the client obtains a judgment, the attorney must bring a separate, independent action against the client to establish the existence of the lien, to determine the amount of the lien, and to enforce it. [Citations.] An order within the underlying action purporting to affect an attorney's lien is void." (*Carroll v. Interstate Brands Corp., supra,* 99 Cal.App.4th at p. 1173.)

Under *Carroll* and the numerous cases cited in *Carroll*, the trial court in the VMT action had no authority to determine the existence or validity of Brown's claimed lien on the proceeds of the VMT judgment. This means that while Brown was entitled to assert his lien *claim* against the proceeds of the VMT judgment by filing a notice of lien in the VMT action, the trial court had no power to determine in that action whether Brown's lien claim was valid or invalid. Thus, the trial court correctly denied Brown's motion for an order determining the amount and priority of his lien and directing VMT to pay all sums held in the blocked account to him until his lien was satisfied. "Any order or judgment granting the attorney fees made in the main action is in excess of the court's jurisdiction and is void." (*Bandy v. Mt. Diablo Unified Sch. Dist.* (1976) 56 Cal.App.3d 230, 234 [126 Cal.Rptr. 890].)

Brown attempts to avoid the effect of *Carroll* and its predecessors by arguing that each of those cases "concerned either a dispute between a discharged attorney and the client regarding attorney's fees, or a dispute between the client and current counsel and discharged counsel regarding attorney's fees." Brown suggests that while "the trial court does not have either subject matter or personal jurisdiction over the contract dispute between the party and his attorney or former attorney," the court does have jurisdiction over an attorney's lien claim when there is no dispute between the attorney and the client, but only between the attorney and another creditor of the client. According to Brown, because Vortran does not dispute his lien claim, he is entitled to appear as a party in postjudgment proceedings in the VMT action both for the purpose of challenging Cyclon's motion to enforce its lien under section 708.470 and for the purpose of filing an "independent motion . . . to determine lien priority."

Brown is mistaken. While it may be true that *Carroll* and its predecessors involved attorney-client disputes, the rationale of those cases is not limited to such disputes. The rule that the trial court in the underlying action lacks jurisdiction to affect an attorney lien is founded on the fundamental principle "that one who is not a party to a proceeding may not make a motion therein." (*Marshank v. Superior Court* (1960) 180 Cal.App.2d 602, 605 [4 Cal.Rptr. 593].) " ' "It is a recognized rule of legal procedure that no one not a party to the action, without any disclosed interest in the result thereof, can be permitted to thrust himself into the controversy by filing any character of pleading therein. Indeed, it would seem to confound the reason of the law, in a mere action at law, requiring pleadings to make up issues to be tried between the parties named in the action, that one not interpleaded as a party, neither for nor against whom the court could render any relief or judgment, could, *sua sponte*, come into the litigation for any purpose." ' " (*Ibid.*, quoting *Difani v. Riverside County Oil Co.* (1927) 201 Cal. 210, 214 [256 P. 210].)

■ In very limited circumstances, an attorney may be entitled to intervene as a party in the client's action under section 387.[2] "The right of an attorney to intervene for the purpose of settling a dispute between him and his client as to attorney's fees for services rendered in the same action is limited to those actions wherein, by virtue of the contract of employment between the attorney and client, the former is given a specific present interest in the subject matter of the action, which interest might be jeopardized by the client's discharge of his original attorney and the employment of another to prosecute the action." (*Marshank v. Superior Court, supra,* 180 Cal.App.2d at p. 605.) Absent proper intervention, however, the fundamental rule is that the attorney is not a party to the client's action and cannot appear on his or her own behalf to seek any relief in that action, including enforcement of a contractual lien against the proceeds of the judgment. (See *Hansen v. Jacobsen* (1986) 186 Cal.App.3d 350, 356 [230 Cal.Rptr. 580] ["Because the discharged attorney is not a party to the pending action and may not intervene, the trial court has no jurisdiction to award fees to that attorney"].)

■ That there is no dispute between the attorney and the client regarding the attorney lien claim does not confer party status or the right to intervene as a party on the attorney. Nor is an attorney claiming a contractual lien a party to a judgment lien enforcement proceeding under section 708.470, as Brown contends. A judgment creditor claiming a judgment lien under section 708.410 et seq. is deemed a party to the underlying action for purposes of an application under section 708.470 by virtue of subdivision (b) of section 708.430.[3] There is no similar statute, however, that conveys party status on an attorney claiming a contractual lien against the proceeds of the judgment. Moreover, as Brown himself admits, the judgment lien statutes "relate only to liens of judgment creditors, and do not apply to contractually created

---

[2] "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared in the same manner as upon the commencement of an original action, and upon the attorneys of the parties who have appeared, or upon the party if he has appeared without an attorney, in the manner provided for service of summons or in the manner provided by Chapter 5 (commencing with Section 1010) Title 14 of Part 2. A party served with a complaint in intervention may within 30 days after service move, demur, or otherwise plead to the complaint in the same manner as to an original complaint." (§ 387, subd. (a).)

[3] "For the purposes of Sections 708.450 and 708.470, a judgment creditor shall be deemed to be a party to the action or special proceeding even though the judgment creditor has not become a party to the action or proceeding under subdivision (a)." (§ 708.430, subd. (b).)

attorneys' fees liens." (*Pangborn Plumbing Corp. v. Carruthers & Skiffington* (2002) 97 Cal.App.4th 1039, 1056 [119 Cal.Rptr.2d 416].)

Without an applicable statute on which to rely, Brown cites several cases to support his argument that a person claiming a contractual lien against the proceeds of a judgment is a party to a judgment lien enforcement proceeding under section 708.470. Brown's reliance on those cases is misplaced.

The first case on which Brown relies is *Cetenko v. United California Bank*, *supra*, 30 Cal.3d 528. In *Cetenko*, an attorney (Schwartz) entered into a fee agreement with a client (Cetenko) in November 1976 regarding "an action to establish ownership of a parcel of real property." (*Id.* at p. 530.) The agreement provided "that most of the fee would be deferred and that fees owed by Cetenko would become a lien upon any recovery in the action." (*Ibid.*)

In July 1979, a judgment creditor of Cetenko's (Schaefer) "was granted a [judgment] lien by the trial court pursuant to [the predecessor of section 708.410 et seq.], on the proceeds of any judgment which [Cetenko] would recover in the action filed by Schwartz on his behalf."[4] (*Cetenko v. United California Bank*, *supra*, 30 Cal.3d at pp. 530–531.)

After Cetenko recovered a money judgment in the action, and the defendant deposited the sum of the judgment in court, "Schwartz filed a motion seeking release of the entire proceeds to him as payment for services rendered . . . . The trial court granted Schwartz's motion, but ordered that he deposit the amount Cetenko owed to Schaefer in a bank account, from which withdrawals could only be made with the joint consent of Schwartz and Schaefer's attorney." (*Cetenko v. United California Bank*, *supra*, 30 Cal.3d at p. 531.)

On Schaefer's appeal, our Supreme Court concluded that Schwartz's contractual lien was valid and was entitled to priority over Schaefer's judgment lien, and therefore the Supreme Court affirmed the trial court's order. (*Cetenko v. United California Bank*, *supra*, 30 Cal.3d at pp. 531–536.)

The facts of *Cetenko* appear to call into question the rule from *Carroll* and its predecessors that because the attorney is not a party to the underlying action, the trial court lacks jurisdiction to enforce the attorney contractual lien

---

[4] Under the predecessor statute to section 708.410, a judgment lien was not created automatically by the filing of a notice of lien. Instead, the judgment creditor had to file a motion to obtain a lien, which the court had discretion to grant or deny. (See *Cetenko v. United California Bank*, *supra*, 30 Cal.3d at p. 530, fn. 1; Legis. Com. com., 17 West's Ann. Code Civ. Proc. (1987 ed.) foll. § 708.410, pp. 467–468.)

in the underlying action. It is critical to note, however, that the jurisdictional issue was never raised in *Cetenko*. That is, so far as can be determined from the Supreme Court's opinion, no party ever objected to Schwartz's filing of a motion in the underlying action to enforce his lien. Thus, when the *Cetenko* court affirmed the trial court's order enforcing Schwartz's lien, "it did so without analysis of the jurisdiction issue." (*Carroll v. Interstate Brands Corp.*, *supra*, 99 Cal.App.4th at p. 1174 [making the same point regarding an appellate decision that "endorsed the remedy of granting [a] motion to expunge" an attorney lien in the underlying action].) "Because a case is not authority for a proposition not considered" (*ibid.*), *Cetenko* does not support Brown's argument that an attorney lien claimant is entitled to file a motion in his or her client's action to enforce his or her lien on the client's judgment.

All four of the other cases on which Brown relies—*Nicoletti v. Lizzoli* (1981) 124 Cal.App.3d 361 [177 Cal.Rptr. 685], *Cappa v. F & K Rock & Sand, Inc.* (1988) 203 Cal.App.3d 172 [249 Cal.Rptr. 718], *Bluxome Street Associates v. Fireman's Fund Ins. Co.* (1988) 206 Cal.App.3d 1149 [254 Cal.Rptr. 198], and *Pangborn Plumbing Corp. v. Carruthers & Skiffington*, *supra*, 97 Cal.App.4th at page 1039—are likewise of no assistance to Brown because in none of those cases did any party object to the trial court's adjudicating the contractual lien in the underlying matter.

■ As the court explained with reference to consensual medical liens in *Lovett v. Carrasco* (1998) 63 Cal.App.4th 48 [73 Cal.Rptr.2d 496], a trial court does not lack *fundamental* jurisdiction to adjudicate contractual liens in the underlying action because "adjudication of [contractual] lien claims is clearly within the general subject matter jurisdiction of the superior court." (*Id.* at p. 54.) "The jurisdictional issue is whether the court [in the underlying action] act[s] in *excess* of its jurisdiction by adjudicating [contractual] liens . . . ." (*Ibid.*, italics added.) " 'Unlike some other jurisdictional defects, a party may, by its conduct, be estopped from contesting an action in excess of jurisdiction.' " (*Ibid.*, quoting *Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1022 [43 Cal.Rptr.2d 717].) Thus, when the parties to an action allow the trial court to adjudicate a contractual lien in the underlying case without objection, that adjudication—although in excess of the court's jurisdiction—is nonetheless valid. (See *Lovett v. Carrasco*, *supra*, 63 Cal.App.4th at p. 55; *Law Offices of Stanley J. Bell v. Shine, Browne & Diamond*, *supra*, 36 Cal.App.4th at pp. 1022–1027.)

■ It does not follow, however, that an attorney lien claimant is entitled to adjudication of his or her lien in the underlying action *over the objection* of a party to the action. Indeed, Brown does not cite a single case in which such an adjudication was upheld over objection. When a party— be it the plaintiff client or a judgment creditor deemed a party for purposes of an

application under the judgment lien statutes—objects to the adjudication of the attorney lien claim in the underlying action, the fundamental rule set forth in *Carroll* and its predecessors applies: Any order within the underlying action purporting to affect the attorney lien, whether positively or negatively, is void.

■ Because the trial court in the VMT action did not have the power to adjudicate Brown's lien claim over Cyclon's objection, the trial court correctly denied Brown's motion for an order determining the amount and priority of his lien and directing VMT to pay all sums held in the blocked account to him until his lien was satisfied. The trial court has no power to determine whether Brown has a valid lien, let alone the amount or priority of that lien. If Brown wants to establish and enforce his lien on the proceeds of the VMT judgment, he must bring a separate action to do so.

Brown suggests that requiring him to bring a separate action against Vortran to enforce his lien, when "there is no conflict or dispute between [him] and [Vortran] concerning the amount of the fees and costs or the fact that [he] was granted a lien on the judgment," would require him to violate the Rules of Professional Conduct and the Business and Professions Code and commit a tort because such an action would be "without just cause." Not so. By requiring Brown to bring a separate action to enforce his lien, we do not mean to suggest that he must sue Vortran for breach of contract. Given the apparent lack of any controversy between Brown and Vortran, but the clear existence of an actual controversy between Brown and Cyclon over whose lien on the proceeds of the VMT judgment is entitled to first priority, a declaratory relief action under section 1060 seeking "a declaration of [Brown's] . . . rights . . . with respect to [Cyclon], or in respect to" the proceeds of the VMT judgment would be appropriate. Even if Brown were to name Vortran as a defendant in such a declaratory relief action, Vortran would not have to appear in the action if it did not claim any remaining interest in the judgment.[5]

By requiring Brown to bring a separate action to establish and enforce his lien, we also do not mean to suggest that Brown must obtain a money judgment against Vortran, then obtain a judgment lien under section 708.410 et seq. before he can enforce his lien against the proceeds of the VMT judgment. If Brown files a declaratory relief action naming Cyclon as a defendant, Brown and Cyclon can litigate the validity, amount, and priority of

---

[5] Indeed, given that Vortran has had its corporate powers suspended, at this juncture Vortran *cannot* appear. (See *Palm Valley Homeowners Assn., Inc. v. Design MTC* (2000) 85 Cal.App.4th 553, 560 [102 Cal.Rptr.2d 350] ["a corporation suspended for failure to file a required statement under Corporations Code section 1502 is . . . disabled from participating in any litigation activities"].)

Brown's lien in that action. If Brown's lien claim, based on the fee agreements he allegedly entered into with Vortran in 1992, is valid, then under *Cetenko* his lien will have priority over the judgment lien Cyclon obtained in 1994, and Brown can enforce that lien in the declaratory relief action without having to obtain a judgment lien under section 708.410 et seq. in the VMT action.

## V

### *Adjudicating Competing Lien Claims*

Having concluded the trial court properly denied Brown's motion to enforce his contractual lien in the VMT action, the questions that remain are whether the court acted properly: (1) in denying Brown's application to correct the opposition to Cyclon's application under section 708.470; (2) in striking that opposition; and (3) in granting Cyclon's application:

■ Because Brown is not a party to the VMT action, he was not entitled to file an opposition to Cyclon's application on his own behalf. It may be that, in other circumstances, an attorney in Brown's position could effectively appear in opposition to the application by filing an opposition on behalf of his client. That will not work here, however, because the suspension of Vortran's corporate powers precludes Brown from filing any papers on Vortran's behalf. (See *Palm Valley Homeowners Assn., Inc. v. Design MTC, supra,* 85 Cal.App.4th at p. 560.) Thus, the trial court did not abuse its discretion in denying Brown's application to correct the opposition or in striking the opposition.

As for whether the trial court acted properly in granting Cyclon's application, we reach a different conclusion. Subdivision (a) of section 708.470 provides that "[i]f the judgment debtor [here, Vortran] is entitled to money or property under the judgment in the action or special proceeding and a lien created under this article exists, upon application of any party to the action or special proceeding, the court *may* order that the judgment debtor's rights to money or property under the judgment be applied to the satisfaction of the lien created under this article as ordered by the court." (Italics added.) "The ordinary import of 'may' is a grant of discretion." (*In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495].) Thus, whether to apply the judgment proceeds to satisfy Cyclon's judgment lien, in the face of Brown's competing lien claim, was a discretionary decision for the trial court. "The only limitation that the law places upon the exercise of that judicial discretion is that it not be abused. [Citation.] [¶] 'Under no circumstances is the discretion of the Court to be exercised arbitrarily, but it is a discretion governed by legal rules, to do justice according to law or to the

analogies of the law, as near as may be . . . . It must be exercised within the limitations above stated to promote substantial justice in the case.' " (*Nicoletti v. Lizzoli, supra,* 124 Cal.App.3d at p. 366, quoting *Lybecker v. Murray* (1881) 58 Cal. 186, 189.)

 Given the importance of attorney contractual liens, as exemplified by the public policy concerns expressed in *Cetenko,* we conclude that when a trial court presented with an application under section 708.470 has notice of an attorney's claim of a contractual lien against the proceeds of the judgment that, if valid, would have priority over the judgment lien that is the subject of the application, the trial court must take all relevant circumstances— including the potential existence of a senior lien—into account in exercising its discretion whether to grant or deny the application. Moreover, the court must bear in mind that the party making the application bears the burden of persuading the court the application should be granted and the judgment proceeds applied to satisfy the judgment creditor's lien, notwithstanding the attorney's potentially senior claim of a lien on those proceeds.

Here, although the trial court in the VMT action had no power to adjudicate the validity of Brown's lien over Cyclon's objection, the court had the power, not to mention the responsibility, to take Brown's *claim* of a lien into account in deciding whether to grant or deny Cyclon's application under section 708.470. Although Brown is not a party to the VMT action and therefore was not entitled to file an opposition to Cyclon's application, the court could still take notice that Brown claims an attorney contractual lien against the proceeds of the VMT judgment and could weigh that fact in deciding Cyclon's application.[6] If Brown's lien claim is valid, then his contractual lien has priority over Cyclon's judgment lien by nearly two years. Under these circumstances, it might well constitute a denial of substantial justice and therefore an abuse of discretion for the trial court to direct payment of the judgment proceeds to Cyclon without giving Brown a fair opportunity to first litigate the validity of his lien claim in a separate action.

Of course, we do not mean to suggest that Brown can hold the VMT judgment hostage indefinitely against Cyclon's judgment lien by deferring, without good cause, a separate action on his lien claim. We also do not mean to express any opinion on whether Brown has, to date, been denied a fair

---

[6] Usually, the court will have notice of the attorney lien claim from a notice of lien filed in the action. Although it does not appear from the record before us that Brown filed a notice of lien in the VMT action, plainly the papers filed to date—whether the court should have permitted their filing in the first place—have given the trial court sufficient notice of Brown's lien claim for the court to consider that claim in ruling on Cyclon's application.

opportunity to bring such a separate action. There are some circumstances in this case, however, that bear on the trial court's exercise of its discretion in ruling on Cyclon's application, and it is not apparent from the record before us that the trial court actually considered those circumstances in granting the application.

First, Brown's belief that he was entitled to enforce his lien in the VMT action, although mistaken, was not entirely unreasonable based on the several appellate decisions (discussed above) arising out of cases where enforcement proceedings in the underlying cases went forward without objection. Prior to this opinion, there has been no published appellate decision of which we are aware addressing how and where a conflict between a creditor claiming a judgment lien under section 708.410 et seq. and an attorney claiming a contractual lien on the proceeds of the same judgment is to be resolved. Thus, while we conclude Brown must bring a separate action to enforce his lien, his belief to the contrary—which may explain his failure to bring a separate action so far—was not completely unwarranted.

Second, when Brown first moved to establish the priority of his lien in the VMT action in 1998, the trial court did not reject his motion out of hand as being beyond the court's jurisdiction. Instead, in denying Brown's motion "without prejudice," the court simply stated that it had not "been informed regarding the authority of seeking this determination in this action as contrary to an independent action or proceeding." If this ruling did not exactly encourage Brown's mistaken belief about his right to enforce his lien in the VMT action, the ruling certainly did little to discourage that belief.[7]

Third, in applying for an order under section 708.470, Cyclon made reference to two orders arising out of the arbitration between Vortran and Cyclon that Cyclon contended entitled it to the proceeds of the VMT judgment. While the trial court apparently rejected Cyclon's arguments based on those orders in its tentative ruling, the court made no mention of them after it vacated its tentative ruling and granted Cyclon's motion.

Fourth, and of perhaps even greater interest, is what we do not know from this record, namely, what occurred in the more than five years that elapsed between the denial of Brown's initial motion to determine lien priority in March 1998 and the filing of Cyclon's application to satisfy its judgment lien

---

[7] It bears noting that Cyclon appeared in response to Brown's first motion to determine lien priority, although the record does not reveal what position Cyclon took at that time.

under section 708.470 in June 2003. The reasons why neither Brown nor Cyclon apparently sought to enforce their liens during that period could well have a bearing on the trial court's decision whether to allow Cyclon to enforce its lien at this time without a prior adjudication of the validity of Brown's lien in a separate action.

We hasten to point out that in its application under section 708.470, Cyclon not only expressly acknowledged Brown's competing lien claim, but argued that claim was not a bar to granting its application because the court's jurisdiction was "limited to ordering application of the monies owed Vortran by VMT to judgment creditor Cyclon" and did not extend "to determin[ing] the existence or validity of [Brown's] attorney's lien on the judgment." At no time, either in its application or in the various other papers it filed, did Cyclon offer any *evidence* tending to show why it would be just and reasonable for the court to allow Cyclon to collect the judgment proceeds despite Brown's claim of a potentially senior attorney lien. Instead, Cyclon stood on the proposition that the trial court could not adjudicate the validity of Brown's lien claim in the VMT action and therefore—almost by default—Cyclon should be entitled to satisfy its judgment lien out of the VMT judgment first.

All of these circumstances are relevant to a determination of whether it would promote substantial justice to grant Cyclon's application under section 708.470 at this time. It does not appear from the record before us, however, that the trial court took these circumstances into account. From the court's "Ruling on Submitted Matter," it appears the court may have granted Cyclon's motion simply because Brown was "not a party and ha[d] no right to intervene" and because "Vortran is a suspended corporation and may not appear." In other words, the court may have granted the application merely because no *party* to the action opposed it.

Although we review a trial court's ruling, not its reasoning (*Bridgestone Corp. v. Superior Court* (2002) 99 Cal.App.4th 767, 774 [121 Cal.Rptr.2d 673]), here we cannot determine whether the trial court would have exercised its discretion to grant Cyclon's application had it considered all of the relevant circumstances in the light of the legal principles we have set forth in this opinion. (Cf. *People v. Allen* (2001) 88 Cal.App.4th 986, 999 [106 Cal.Rptr.2d 253].) Accordingly, we shall remand the matter to the trial court to reconsider Cyclon's application in the light of this opinion.

## DISPOSITION

The petition is granted. Let a peremptory writ issue directing the respondent court to: (1) vacate its order granting the application of real party in interest Cyclon Corporation under Code of Civil Procedure section 708.470; and (2) reconsider that application in the light of this opinion.

Petitioner Michael E. Brown shall be entitled to recover his costs in this proceeding. (Cal. Rules of Court, rule 56.4(a).)

Nicholson, Acting P. J., and Raye, J., concurred.

Petitioner's petition for review by the Supreme Court was denied May 19, 2004.