Filed 6/29/16  Younessi v. Killackey CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RAMIN R. YOUNESSI et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>MICHAEL A. KILLACKEY et al.,<br><br>    Defendants and Respondents. | B260308<br><br>(Los Angeles County<br>Super. Ct. No. BC494677) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Elizabeth Allen White, Judge.  Affirmed.

Law Offices of Ramin R. Younessi, Ramin R. Younessi, Gabriel J. Pimentel for Plaintiffs and Appellants.

Killackey Law Offices, Michael A. Killackey, Albert R. Killackey for Defendants and Respondents.

## INTRODUCTION

Plaintiffs and appellants Ramin R. Younessi (Younessi) and Law Offices of Ramin R. Younessi, a professional law corporation (LORY-Corp.), appeal from a judgment entered after the trial court granted a motion for judgment on the pleadings filed by defendants and respondents Michael A. Killackey (Killackey) and Killackey Law Offices, LLP (KLO-LLP). Plaintiffs contend that the trial court erred in acting upon four ex parte applications in the course of the case: granting defendants' ex parte application for a trial continuance; denying plaintiffs' ex parte application for a trial continuance or stay of the proceedings; denying plaintiffs' request for 30 days leave to amend the complaint, rather than 5 days, after the trial court granted defendants' first motion for judgment on the pleadings; and vacating the plaintiffs' voluntary dismissal of the conversion cause of action that was filed the day before the judgment. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

This case concerns attorney fees for the representation of Veronica Munoz, who, in November 2008, was injured in an automobile accident involving James Sheridan.

In April 2010, Munoz retained LORY-Corp. to represent her as counsel in connection with the November 2008 accident. Munoz agreed to pay LORY-Corp. a contingency fee of 33 1/3 percent of the gross recovery obtained without a lawsuit or 40 percent of the gross recovery obtained if a lawsuit was filed.

In April 2010, LORY-Corp. filed an action on behalf of Munoz and her passenger against Sheridan (Sheridan action). Younessi's only involvement in Munoz's representation was that on behalf of LORY-Corp.

In June 2011, Munoz terminated LORY-Corp. as her attorney, and, according to defendants, on the same day retained KLO-LLP to represent her in the Sheridan action. KLO-LLP filed a substitution of attorney and became Munoz's counsel of record in the

2

Sheridan action. In December 2011 the Sheridan action settled, and on April 23, 2012, KLO-LLP received settlement funds in the Sheridan action and deposited them into its client trust account.

On October 29, 2012, Younessi, through his counsel, LORY-Corp., filed the original complaint in this case, asserting causes of action for compensation for legal services rendered and breach of lien.[1] The record contains no indication that Younessi or LORY-Corp. has ever filed a notice of lien.

On July 10, 2013, Younessi, through his counsel, LORY-Corp., filed a second amended complaint (SAC) asserting causes of action for compensation for legal services rendered, breach of lien, and conversion. Because of the settlement in the Sheridan action, Younessi claimed that he was entitled to $640,000 under the terms of LORY-Corp.'s retainer agreement, based on the reasonable value of his services rendered to Munoz. Younessi also alleged that Killackey and KLO-Corp. breached Younessi's lien "arising out of his representation of" Munoz, and converted Younessi's funds by withholding $640,000 from him.

On January 10, 2014, defendants filed an ex parte application to continue for at least six months the trial set for March 7, 2014. The trial court granted defendants' ex parte application.[2]

On June 11, 2014, defendants filed a motion for summary judgment or summary adjudication (MSJ) against Younessi contending that, inter alia, Younessi lacked standing. In their reply brief, defendants argued that Younessi failed to comply with *Mojtahedi v. Vargas* (2014) 228 Cal.App.4th 974, 976, 977-979 (*Mojtahedi*), which requires that a prior attorney suing a successor attorney for attorney fees must first sue the client in a separate action and establish the existence, amount, and enforceability of

---

[1] The original complaint was against Killackey and Killackey Law Offices, a California corporation (KLO-Corp.) KLO-LLP was substituted as a defendant in place of KLO-Corp. in the Second Amended Complaint.

[2] The record does not contain the trial court's order or a reporter's transcript of the hearing, but it appears undisputed that the court granted the application.

3

the attorney fees. Defendants also argued that all of Younessi's claims are based on quantum meruit and the applicable two-year statute of limitations had expired.

On June 23, 2014, Younessi substituted himself and another attorney as Younessi's counsel instead of LORY-Corp., which had been a suspended and unregistered corporation throughout the lawsuit.[3] On August 1, 2014, with LORY-Corp. returned to good standing, Younessi moved to amend the operative complaint to add LORY-Corp. as a plaintiff, and sought to add a new cause of action against defendants for money had and received.

Plaintiffs then initiated a separate lawsuit that they argue was filed "in order to satisfy" *Mojtahedi, supra,* 228 Cal.App.4th at page 974. Specifically, on August 18, 2014, plaintiffs filed a declaratory relief action against Munoz (Munoz declaratory relief action), seeking a determination of their right to all or a portion of the settlement proceeds in the Sheridan action; of their lien against the settlement proceeds; of "the reasonable value of services rendered [to Munoz] by" Younessi and LORY-Corp.; and of the existence, amount, and enforceability of their lien on the settlement proceeds.

At the August 25, 2014, hearing on defendants' MSJ and Younessi's motion for leave to amend the complaint, the trial court stated that because the Munoz declaratory relief action was not before it (and had not been "related" to the instant action), the trial court could not control the time when Younessi and LORY-Corp. obtained a declaratory judgment, if any, against Munoz, and it could not make a determination about whether the applicable statute of limitations bars the Munoz declaratory relief action. The trial court suggested that Younessi "jump through the procedural hoops to get [the Munoz declaratory relief action] before [it]" so there could "be a determination on the statute of limitations." The trial court also noted there was no motion to stay pending before it.

---

**3** In 2002, LORY-Corp. was suspended by the Secretary of State and Franchise Tax Board. On December 31, 2009, the California State Bar revoked LORY-Corp.'s law corporation registration. Between June 30, 2014 and July 29, 2014, LORY-Corp. was relieved of suspension by the Franchise Tax Board, the California State Bar certified that LORY-Corp. was a registered law corporation, and the Secretary of State issued a certificate of status stating that LORY-Corp. is in good standing.

The trial court ruled that "all of [Younessi's] causes of actions [are based on his] hold[ing] an attorney's lien for legal services rendered to his client in the [Sheridan] action. Without a lien, [Younessi] does not have any ownership interest or claim to the right of possession in the money being held by [d]efendants." The trial court stated that the first cause of action for compensation for legal services rendered is a quantum meruit claim and such a claim may be viable against Munoz, but not against defendants; and the second cause of action for breach of lien and the third cause of action for conversion necessarily depend upon the existence of the alleged attorney's lien, but Younessi failed to allege in his SAC that he "ha[d] obtained" a declaratory judgment against Munoz.

The trial court exercised its discretion to treat defendants' MSJ as a motion for judgment on the pleadings (first MJOP); granted the motion; granted Younessi five court days to file an amended complaint; and granted Younessi leave to add LORY-Corp. as a plaintiff and to add a new cause of action for money had and received. As to the filing of an amended complaint, the trial court stated, "[I]f [Younessi] does not plead in this third amended complaint that he has first established the existence, amount, and enforceability of his lien on the settlement money by way of a declaratory relief action against his client Munoz, then Defendants may bring a dispositive motion which the Court would likely grant without leave to amend."

On September 2, 2014, plaintiffs filed a third amended complaint (TAC), asserting causes of action for compensation for legal services rendered, breach of lien, conversion, and money had and received. Plaintiffs alleged that they filed on August 18, 2014, a declaratory action against Munoz and therefore "are in the process of" establishing the existence, amount, and enforceability of their lien on the settlement proceeds.

A jury trial was scheduled for September 29, 2014. On September 4, 2014, defendants filed an ex parte application seeking judgment on the pleadings based on the TAC, or alternatively, an order specially setting a hearing on a second MJOP because there was insufficient time to file a noticed motion. Defendants filed their second MJOP concurrently with the ex parte application. On the same day, even though they had filed the TAC, plaintiffs filed an ex parte application for an order extending the deadline to file

5

the TAC to 30 days from the August 25, 2014, hearing (i.e., September 24, 2014), staying the action, and continuing the trial date "so as to allow Plaintiff[s] to establish the existence of his lien [against Munoz in the Munoz declaratory relief action]." Plaintiffs stated, "If Plaintiff[s are] not permitted to adjudicate [their] declaratory relief action prior to the trial in this case, this action will be subject to dismissal for failure to establish Plaintiff[s'] lien . . . ."

At the September 4, 2014, hearing on the ex parte applications, plaintiffs' counsel stated that he had not yet filed a notice of related case concerning the Munoz declaratory relief action, but would do so "if the [trial] court is going to allow this action to proceed." Even though plaintiffs had filed the TAC already, plaintiffs' counsel "wanted the 30 days [to filed an amended complaint] . . . to attempt to obtain a stipulated judgment or some other resolution in this declaratory action that could potentially allow us to have a defense in opposition to this motion for judgment on the pleadings. [¶] . . . [¶] I could conceivably next week come in with a judgment, declaratory judgment signed by the judge stating that I have my lien . . . ." The trial court granted defendants' ex parte application for an order shortening time to hear their second motion for judgment on the pleadings (second MJOP), and set the hearing for September 24, 2014, to allow 30 days to pass after the August 25, 2014, hearing. The trial court denied plaintiffs' ex parte application, stating that it was "not going to keep this as a moving target" and that because plaintiffs filed the TAC, their request for additional time to file the amended complaint was moot.

Plaintiffs filed an opposition and a supplemental opposition to the second MJOP. Meanwhile, on September 12, 2014, plaintiffs filed a request for dismissal without prejudice as to the cause of action for conversion only; the request for dismissal was ambiguous because it did not identify which of the two plaintiffs was dismissing the cause of action. The record does not indicate that this request was acted upon. On September 23, 2014, one day before the hearing on defendants' second MJOP, both plaintiffs filed a request for dismissal without prejudice as to their conversion cause of action. Dismissal was entered by a clerk on the same date.

6

On September 24, 2014, defendants' second MJOP was heard, as was defendants' ex parte application, filed that day, to set aside the dismissal of the conversion cause of action (ex parte application to set aside dismissal). As to the second MJOP, the trial court stated, "The court had construed the summary judgment filed by Michael Killackey and The Killackey Law Offices as a Motion for Judgment on the Pleading[s] with leave to amend. The conditions for leave to amend were very, very narrow; and the court indicated that the court would strike anything that was not within that narrow window for purposes of amendment. [¶] The amendment specifically related to whether or not the lien was based upon an agreed upon lien, whether or not there had been a determination as to the validity of the lien prior to the filing of the litigation." The trial court took the matters under submission.

On September 29, 2014, the trial court granted defendants' second MJOP without leave to amend because the TAC did not allege that plaintiffs had obtained a judgment against Munoz establishing the existence, amount, and enforceability of the lien on the settlement proceeds. The trial court also granted defendants' ex parte application to set aside dismissal, stating that plaintiffs could not avoid the trial court's August 25, 2014, ruling regarding the deficiency of the conversion cause of action by simply dismissing it without prejudice.

Judgment was entered in favor of defendants. Plaintiffs filed a timely notice of appeal.

## DISCUSSION

### A.     Ex Parte Applications to Continue

Plaintiffs contend the trial court abused its discretion in granting defendants' ex parte application to continue the trial set for March 7, 2014, and, later, denying plaintiffs' ex parte application to continue the hearing on defendants' second MJOP or stay the proceedings pending the resolution of the Munoz declaratory relief action. We disagree.

7

*1.      Standard of Review*

We review a trial court's ruling on a motion for a stay under the abuse of discretion standard.  (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 480.)  Similarly, a trial court's ruling whether a particular hearing or trial should be postponed is reviewed for abuse of discretion.  (*Dailey v. Sears, Roebuck & Co.* (2013) 214 Cal.App.4th 974, 1004.)  "'The policy favoring a full and fair hearing calls for a more careful appellate review of the exercise of discretion in *denying* a continuance [citation], but it is usually upheld.'  [Citation.]  However, it is much more difficult to demonstrate an abuse of discretion when a continuance is *granted*.  """On an appeal from the judgment (the order itself being nonappealable) it is practically impossible to show reversible error in the *granting* of a continuance."""  [Citations.]"  (*Bussard v. Department of Motor Vehicles* (2008) 164 Cal.App.4th 858, 863, fn. 1.)

"An abuse of discretion occurs 'where, considering all the relevant circumstances, the court has exceeded the bounds of reason or it can fairly be said that no judge would reasonably make the same order under the same circumstances.'  [Citation.]"  (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 7.)  "[A] trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.  [Citation.]"  (*People v. Guerra* (2006) 37 Cal.4th 1067, 1113, overruled on another point by *People v. Rundle* (2008) 43 Cal.4th 76, 151.)

*2.      Analysis*

a)      Defendants' Ex Parte Application to Continue Trial

Plaintiffs have not established the trial court abused its discretion in granting defendants' January 10, 2014, ex parte application to continue the trial.  Plaintiffs contend the trial court erred because defendants' ex parte application did not include a declaration of irreparable harm or immediate danger they would have suffered if their request for a trial continuance was not heard ex parte, as required by California Rules of

8

Court, rule 3.1202.  Plaintiffs have forfeited this contention.  There is nothing in the record to establish plaintiffs objected on that basis during the trial court proceedings.  "A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court.  [Citations.]"  (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 221-222; *In re Levi U*. (2000) 78 Cal.App.4th 191, 201; *In re Seaton* (2004) 34 Cal.4th 193, 198.)

In any event, the declaration attached to the application did provide a factual basis for why relief was needed immediately given the March 12, 2014 trial date:  the last day to serve written discovery was the following business day, January 13, 2014; the deadline to exchange experts was January 21, 2014; the deadline to respond to the complaint-in-intervention was January 24, 2014; and the discovery cut-off date was February 10, 2014.  Thus, the declaration stated, "the pleadings will not be at issue until well after the discovery cut-off date and possibly the scheduled trial date."

Plaintiffs also contend that the trial court erred in granting the ex parte application because it was not served on plaintiffs "at the first reasonable opportunity," as required by California Rules of Court, rule 3.1206, and abused its discretion in denying plaintiffs' request they be provided with time to review the ex parte application and file an opposition addressing defendants' arguments.  In plaintiffs' opposition to defendants' ex parte application, they argue they were not served with the ex parte application as of the time plaintiff's opposition was executed, but was advised the ex parte application had not yet been completed.  Plaintiffs state defendants did not serve their ex parte application until the morning of the hearing.  Plaintiffs however have not established when the ex parte application was completed, or that it was not served on plaintiffs "at the first reasonable opportunity."  Plaintiffs have not established the trial court abused its discretion in granting defendants' ex parte application, or denying plaintiffs' request they be permitted to file an opposition addressing the specific arguments contained in the application.

9

b)      Plaintiffs' Ex Parte Application to Continue Trial or Stay the
        Proceedings

The trial court did not abuse its discretion in denying plaintiffs' request for a continuance of the trial or stay of the proceedings. Plaintiffs argue they filed the Munoz declaratory relief action on August 18, 2014, "in order to satisfy" *Mojtahedi*, *supra,* 228 Cal.App.4th at pages 974, 976, 977-979, as under that decision a prior attorney suing a successor attorney for attorney fees must first sue the client in a separate action and establish the existence, amount, and enforceability of the attorney fees. They sought ex parte relief to continue the trial or stay the proceedings until there was a final resolution of the Munoz declaratory relief action. Plaintiffs contend *Mojtahedi*, published on August 8, 2014, "caused a significant and unanticipated change in the status of the case, which prevented [plaintiffs] from being ready for trial." We disagree.

*Mojtahedi, supra,* 228 Cal.App.4th 974 did not create a "significant and unanticipated change" in the law regarding plaintiffs' right to recover a portion of the settlement money in the Sheridan action. *Mojtahedi* did not even purport to establish new law but simply relied upon existing law requiring an attorney to first bring a suit against the client before suing a successor attorney, stating that this law was "well established." (*Mojtahedi, supra,* 228 Cal.App.4th at p. 977.) *Mojtahedi* stated, "It is well established that '"[a]fter the client obtains a judgment [or settlement], the attorney must bring a separate, independent action against the client to establish the existence of the lien, to determine the amount of the lien, and to enforce it."' (*Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 328 [], quoting *Carroll* [*v. Interstate Brands Corp*. (2002)] 99 Cal.App.4th [1168,] 1173; accord, *Valenta* [*v. Regents of University of California* (1991)] 231 Cal.App.3d [1465,] 1470 [(*Valenta*)]; *Hansen* [*v. Jacobsen* (1986)] 186 Cal.App.3d [350,] 356 [(*Hansen*)]; *Bandy* [*v. Mt. Diablo Unified Sch. Dist.* (1976)] 56 Cal.App.3d [230,] 234 [(*Bandy*)]; *Hendricks v. Superior Court* (1961) 197 Cal.App.2d 586, 589 [].)" (*Mojtahedi, supra,* 228 Cal.App.4th at pp. 977-978.) "[T]he central principle conveyed by *Valenta, Hansen,* and *Bandy* [is] the attorney's lien is only enforceable after the attorney adjudicates the value and validity of the lien in a separate

10

action against his client." (*Id*. at p. 978.) "Without an enforceable lien, [the former attorney] cannot prove that he has a right to a portion of the settlement money." (*Id*. at p. 977.)

It had long been held that an attorney employed under a continent fee contract and discharged prior to the occurrence of the contingency is limited to quantum meruit recovery for the reasonable value of the services rendered up to the time of discharge. (See, *Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 156; *Hansen, supra,* 186 Cal.App.3d at p. 356; *Fracasse v. Brent* (1972) 6 Cal.3d 784, 793.) Although there is a basis for a former attorney's quantum meruit claim against a former client for attorney fees, there is no basis for such a claim against the subsequent attorney. (*Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 332.)

In *Mojtahedi*, the plaintiff simply tried to distinguish his case from the established case law in ways that the Court of Appeal viewed as "insignficant" and that "fail[ed] to alter the applicability of the central principle conveyed" in the case law that the attorney must first "adjudicate[] the value and validity of the lien in a separate action against his client" before enforcing it against another attorney. (*Mojtahedi, supra,* 228 Cal.App.4th at p. 978.) The court observed, for instance, that it was settled that it was irrelevant whether the attorney asserted that there was no actual dispute between him and his client about the amount owed. (*Id*. at p. 979.)

Plaintiffs provided the legal services to Munoz, not to defendants. Plaintiffs therefore must litigate with Munoz the existence, amount, and enforceability of the attorney fees. Both in the trial court and in their briefs, plaintiffs did not even attempt to distinguish the applicability of the "central principle" that they must first establish the lien, as the plaintiff attempted to in *Mojtahedi*. They claimed that the central principle was a change in the law. There is no support for this claim in *Mojtahedi*, which recognizes that law as long settled.

Plaintiffs did not even file the Munoz declaratory relief action until almost two years after Younessi filed his original complaint against defendants seeking attorney fees purportedly based on his representing Munoz. The trial court did not abuse its discretion

11

in denying plaintiffs' ex parte request for a continuance of the trial or a stay of the proceedings until there was a final resolution of that declaratory relief action, which under existing law, plaintiffs should have filed several years prior.

### B.	30 Days Leave to Amend Complaint

Plaintiffs contend the trial court erred by failing to permit plaintiffs' 30 days leave to amend complaint after the trial court granted defendants' first MJOP.  We disagree.

On June 11, 2014, defendants filed a MSJ against Younessi arguing, inter alia, that a prior attorney suing a successor attorney for attorney fees must sue the client and establish the existence, amount, and enforceability of the attorney fees.  At the August 25, 2014, hearing on the motion, the trial court exercised its discretion to treat defendants' MSJ as a MJOP; granted the motion; and granted Younessi five court days to file a third amended complaint.

Younessi (the only plaintiff at the time) did not object at the August 25, 2014, hearing to the five-day period for amendment.  Instead, plaintiffs timely filed the TAC on September 2, 2014.

When defendants filed a second motion for judgment on the pleadings and sought an expedited hearing on it ex parte on September 4, 2014, plaintiffs for the first time sought 30 days leave to file an amended complaint, instead of five days.  Plaintiffs argued, as they do on appeal, that under Civil Procedure Code section 438, subdivision (h)(2), when a MJOP is granted with leave to amend the complaint, the trial court "shall" grant 30 days leave to amend the complaint.

The trial court did not err in denying plaintiffs' ex parte application for 30 days leave to amend.  It was only after plaintiffs filed their TAC that they filed an ex parte application seeking additional time to file the amended complaint.  Therefore, as the trial court stated in denying plaintiffs' ex parte application, plaintiffs' request was moot.

Even if the trial court erred by not allowing plaintiffs 30 days leave to amend, plaintiffs fail to establish that they were prejudiced by the error.  Prejudice is not

presumed (Code Civ. Proc., § 475); it is an appellant's burden to affirmatively demonstrate prejudicial error. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.)

Plaintiffs argue they were prejudiced because "[i]t is reasonable to assume that had [plaintiffs'] been provided this additional time to amend, they would have been successful in obtaining a stipulated judgment from [] Munoz because fighting the declaratory action was never in her interest." Plaintiffs similarly argue, "Had [plaintiffs] been given the statutorily mandated 30 days leave to amend in September 2014, it is possible that they could have obtained [Munoz's] consent to a stipulated judgment, and would have therefore been able to plead in the [TAC] that they established their lien against her." These arguments are not only speculative but actually refuted by the record. Plaintiffs did not obtain Munoz's consent to a stipulated judgment by the September 24, 2014, hearing—which was 30 days from when the first MJOP was granted. Moreover, Munoz did, in fact, "fight[]" the Munoz declaratory relief action. As plaintiffs admit, Munoz successfully argued that action was barred by applicable statute of limitations and was dismissed.[4] Plaintiffs have failed to establish they were prejudiced by the trial court's failure to permit plaintiffs 30 days leave to file an amended complaint, instead of five days.

### C.     Vacating the Dismissal of the Conversion Cause of Action

Plaintiffs contend the trial court erred in vacating the voluntary dismissal of the conversion cause of action. Plaintiffs filed one request for voluntary dismissal that was not acted upon (perhaps because it was ambiguous as to which plaintiff sought dismissal) and then filed a second request the day before the MJOP hearing that was signed by a clerk. The trial court did not err in vacating that dismissal.

Section 581, subdivision (c) of the Code of Civil Procedure provides "[a] plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual

---

[4]     The trial court's ruling in the Munoz declaratory relief action is on appeal in Court of Appeal Case No. B265750.

13

commencement of trial."  "But '[t]he right of a plaintiff to voluntarily dismiss an action before commencement of trial is not absolute.' [Citation.]  There are statutory exceptions to a plaintiff's right of voluntary dismissal, and 'other limitations have evolved through the courts' construction of the term "commencement of trial."' [Citation.]  The meaning of the term 'trial' is not restricted to jury or court trials on the merits, but includes other procedures that '"effectively dispose of the case."' [Citation.]" (*Mary Morgan, Inc. v. Melzark* (1996) 49 Cal.App.4th 765, 769.)  That is, "[t]hese exceptions generally arise where the action has proceeded to a determinative adjudication, or to a decision that is tantamount to an adjudication. [Citation.]" (*Cravens v. State Bd. of Equalization* (1997) 52 Cal.App.4th 253, 256; *Mary Morgan, Inc. v. Melzark, supra,* 49 Cal.App.4th at pp. 768-769.)

"When the [voluntary] dismissal could be said to have been taken  [¶]  . . . in the light of a public and formal indication by the trial court of the legal merits of the case, or [¶]  . . . in the light of some procedural dereliction by the dismissing plaintiff that made dismissal otherwise *inevitable*, then the voluntary dismissal is ineffective." (*Franklin Capital Corp. v. Wilson* (2007) 148 Cal.App.4th 187, 200 (*Franklin Capital*).)  The court in *Groth Bros. Oldsmobile, Inc. v. Gallagher* (2002) 97 Cal.App.4th 60 (*Groth Bros. Oldsmobile*) held that a voluntary dismissal without prejudice is invalid once the trial court posts an adverse tentative ruling on a dispositive motion.  (*Id.* at p. 72.)  The court in *Groth Bros. Oldsmobile* reasoned, "As Weil and Brown caution, 'Allowing plaintiff to dismiss after learning of an adverse tentative ruling seems contrary to policies noted in *Wells* [*v. Marina City Properties, Inc.* (1981) 29 Cal.3d 733, 781].  It would permit a plaintiff "who was led to suppose a decision would be adverse to him to prevent such decision and begin anew, thus subjecting the defendant to announcing and continuous litigation."  Moreover, it would waste "the time and money of the people in a fruitless proceeding in the courts . . ." [*Wells v. Marina City Properties, Inc.*, *supra*, 29 C.3d at [p.] 785 . . . .]' (Weil & Brown [, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶] 11:25.3, p. 11-12.)  This is precisely what occurred here.  As was the court in *Gray* [*v. Superior Court* (1997) 52 Cal.App.4th 165], we are persuaded that

14

the 'thread of fairness is twisted out of true by the facts of this case.' ([*Id.*] at p. 173.)" (*Groth Bros. Oldsmobile, supra,* 97 Cal.App.4th at pp. 72-73.)

On August 25, 2014, judgment on the pleadings was granted against Younessi on the SAC, including the third cause of action for conversion. The trial court permitted Younessi a "very very narrow" leave to amend—the expressed purpose of the leave to amend was to allow Younessi the opportunity to plead "whether or not the lien was based upon an agreed upon lien, whether or not there had been a determination as to the validity of the lien prior to the filing of the litigation." The trial court specifically stated, "if [Younessi] does not plead in this third amended complaint that he has first established the existence, amount, and enforceability of his lien on the settlement money by way of a declaratory relief action against his client Munoz, then Defendants may bring *a dispositive motion which the Court would likely grant without leave to amend*." (Italics added.) This constitutes "a public and formal indication by the trial court of the legal merits of the case." (*Franklin Capital, supra,* 148 Cal.App.4th at p. 200.) That is, the trial court had determined, prior to plaintiff's voluntary dismissal of its conversion cause of action without prejudice, that the operative complaint was defective because it did not allege Younessi established the existence, amount, and enforceability of his lien on the settlement money by way of a declaratory relief action against his client Munoz. For that reason, the trial court provided Younessi with an opportunity to amend the operative complaint to avoid a dispositive motion.

Although plaintiffs filed a TAC, it did not cure the defect for which Younessi was provided leave to amend. It did not allege plaintiffs established the existence, amount, and enforceability of the lien on the settlement money. Plaintiffs merely alleged in the TAC that they "are currently in the process of" establishing the existence, amount, and enforceability of their lien on the settlement proceeds.

At the time plaintiffs filed their request for dismissal, it was clear that a dispositive motion—the second MJOP—was pending and all their causes of action were subject to dismissal at the September 24 hearing. The TAC did not cure the deficiency the trial court identified in the SAC on August 25, and the MJOP challenging the TAC had been

15

pending since September 4.  Plaintiffs cannot avoid the imminent ruling by simply voluntarily dismissing the cause of action without prejudice.  The trial court did not err in granting defendants' ex parte application to set aside the clerk's entry of dismissal of the conversion cause of action on the previous day.  The court properly did so and then proceeded to enter judgment for defendants on the entire TAC, as it ruled on August 25 that it would do absent a successful amendment.

**DISPOSITION**

The judgment is affirmed.  The parties are to bear their own costs on appeal.
NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

RAPHAEL, J.[*]

We concur:

KRIEGLER, Acting P.J.

BAKER, J.

---

[*]    Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.