Filed 12/13/16 (unmodified opn. attached)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SOUTHERN CALIFORNIA GAS COMPANY, | B268298 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. BC503027 and BC442504) |
| v. | |
| PATRICK FLANNERY, et al., | ORDER MODIFYING OPINION |
| Defendants and Appellants; | [NO CHANGE IN JUDGMENT] |
| SCOTT J. TEPPER, et al., | |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed on November 14, 2016, is modified as follows:

On page 16, the second sentence of the first full paragraph reads: "Judge Wiley noted his prior January 23, 2013 order in the Sesnon Fire Case that the court in the Palimony Case 'would determine the ownership split between Murray and Flannery' and adopted the finding from the Palimony Case to award

Flannery $1,225,000." The sentence should be replaced with: "Judge Wiley noted his prior January 23, 2013 order in the Sesnon Fire Case that the court in the Palimony Case 'would determine the ownership split between Murray and Flannery' and adopted the finding from the Palimony Case to award Murray $1,225,000."

On page 29, the second sentence of the first full paragraph reads: "This argument is misguided because Flannery's answer to the interpleader complaint was sufficient to place the existence, value, and enforceability of his lien at issue as against Flannery." The sentence should be replaced with: "This argument is misguided because Tepper's answer to the interpleader complaint was sufficient to place the existence, value, and enforceability of his lien at issue as against Flannery."

The petition for rehearing is denied.

---

KRIEGLER, Acting P.J.          BAKER, J.          KUMAR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 11/14/16 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SOUTHERN CALIFORNIA GAS COMPANY, | B268298 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. BC503027 and BC442504) |
| v. | |
| PATRICK FLANNERY, et al., | |
| Defendants and Appellants; | |
| SCOTT J. TEPPER, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley, Judge.  Affirmed.

Daneshrad Law Firm and Joseph Daneshrad for Defendants and Appellants Patrick Flannery and Law Offices of Joseph Daneshrad.

Sheppard Mullin Richter & Hampton, Steven O. Kramer, John A. Yacovelle, Jonathan D. Moss, Marisa B. Miller; Sempra Energy Office of General Counsel and Marlin E. Howes for

Plaintiff and Respondent.

Law Offices of John N. Tierney, John N. Tierney; Garfield & Tepper and Scott J. Tepper for Defendants and Respondents Scott J. Tepper and Garfield & Tepper.

Dennis Ardi for Defendant and Respondent Andrea L. Murray.

_____

This case involves a judgment in an interpleader action initiated by plaintiff and respondent Southern California Gas Company (the Gas Co.) against:  (1) defendant and appellant Patrick J. Flannery; (2) defendant and appellant Law Offices of Joseph Daneshrad (Daneshrad); (3) defendants and respondents Scott Tepper and Tepper's law firm, Garfield & Tepper (collectively, Tepper); and (4) defendant and respondent Andrea L. Murray.  In an earlier published opinion, this court affirmed the lower court's denial of Flannery's special motion to strike under Code of Civil Procedure section 425.16[1] (Anti-SLAPP Motion).  (*Southern California Gas Co. v. Flannery* (2014) 232 Cal.App.4th 477.)  After remand, the Gas Co., Murray, and Tepper each filed a motion seeking payment from the interpleader funds on different grounds, and the court ultimately granted some portion of the funds sought by each party. Flannery and Daneshrad appeal, and we affirm.

_____

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

## FACTUAL AND PROCEDURAL BACKGROUND

We begin with an overview of the parties to this appeal and their respective roles in three cases, of which the last is the interpleader case on appeal.

### Sesnon Fire Case

In 2009, Flannery and Murray sued the Gas Co. for damages suffered as a consequence of the 2008 Sesnon wildfire (Super. Ct. L.A. County, 2009, No. PC046735 [the Sesnon Fire Case], consolidated under the lead case, No. BC442504). Judge John Shepard Wiley presided over the case. Tepper represented Flannery and Murray jointly[2] pursuant to a contingency fee agreement until the fall of 2010, when attorney Dennis Ardi substituted in as Murray's counsel. Tepper continued to represent Flannery until June 2012, when attorney Joseph Daneshrad substituted in as Flannery's counsel.

On February 26, 2013, Flannery, Murray, and the Gas Co. settled the Sesnon Fire Case. The parties' settlement was approved by the court. Although the terms of the settlement were confidential, it is clear that a specific amount (Settlement Funds)[3] was to be paid to Flannery and his counsel, while other

---

[2] Flannery and Murray never married, but have three children together and lived together for two decades until they separated in 2010.

[3] Ultimately, the parties refer to the amount of the Settlement Funds as $2,450,000.

3

amounts were payable to other individuals, including Murray and her counsel.

## Palimony Case

While the Sesnon Fire Case was pending, Murray filed a separate lawsuit against Flannery (Super. Ct. L.A. County, 2014, No. BC438538 [the Palimony Case]) claiming among other things 50 percent ownership of the ranch that was damaged in the 2008 Sesnon fire. Judge Richard E. Rico conducted an eight-day jury trial in the Palimony Case, as well as a separate court trial, and in February 2014 the court entered judgment declaring Murray 50 percent owner of the property that was the subject of the fire damage claims in the Sesnon Fire Case, and directing the court in the Interpleader Case (described below) to disburse to Murray $1,225,000 from the funds being held by the court, subject to any attorney fees and costs to be determined as against her share of the interpleaded funds.

## Interpleader Case

On March 15, 2013, the Gas Co. deposited the Settlement Funds with the court and filed a complaint in interpleader, identifying Tepper, Daneshrad, and Flannery as defendants and claimants. (Super Ct. L.A. County, 2013, No. BC503027 [the Interpleader Case].) The case was assigned to Judge Wiley and related to the Sesnon Fire Case. On March 21, 2013, the Gas Co. filed an amendment adding Murray as a Doe defendant.[4] Tepper

_____

[4] On March 20, 2013, Murray's attorney had informed the Gas Co. of a preliminary injunction entered in the Palimony Case

4

and Murray filed answers in the Interpleader Case on March 25 and March 27, 2013, respectively.

On May 17, 2013, Judge Wiley ordered the Gas Co. discharged from the Interpleader Case. He also denied Flannery's Anti-SLAPP Motion to strike the interpleader complaint under section 425.16. Flannery appealed, and the Interpleader Case was stayed at the trial court level until the appeal was resolved, with this court affirming Judge Wiley's order. The remittitur issued on April 30, 2015.

On May 27, 2015, the Gas Co. filed a motion for attorney fees and costs, seeking payment for expenses incurred after May 8, 2013, in connection with opposing various motions and writ petitions filed by Flannery, as well as the prior appeal. The hearing on the Gas Co.'s motion for attorney fees was scheduled for September 10, 2015. On August 6, 2015, Murray filed a motion seeking to collect the February 24, 2014 judgment awarded to her in the Palimony Case. On August 12, 2015, Tepper filed a motion seeking to collect attorney fees and costs associated with his representation of Flannery in the Sesnon Fire Case. Tepper's motion pointed out that despite the case having been pending for over two years, and remittitur having issued on April 30, 2015, after Flannery's unsuccessful anti-SLAPP appeal, Flannery had not filed an answer and was therefore in default. Tepper's motion also pointed out that Daneshrad had not re-calendared a demurrer filed before the appeal. On August 28,

_____

and requested the Gas Co. to add Murray as a Doe defendant in the Interpleader Action.

5

2015, Flannery and Daneshrad filed answers in the Interpleader Case. Flannery also filed oppositions to all three motions.[5]

On September 10, 2015, Judge Wiley held a hearing on the motions filed by the Gas Co., Murray, and Tepper. He granted all three motions, awarding $169,983.13 to the Gas Co., $1,225,000 to Murray, and $512,295 to Tepper. The final judgment entered on September 23, 2015, also directs the balance of interpleaded funds, including interest, to be paid to Flannery and Daneshrad. Flannery and Daneshrad[6] appealed the judgment on November 9, 2015.

## DISCUSSION

Appellants raise a number of challenges to the court's orders granting the motions filed by the Gas Co., Murray, and Tepper. We first consider whether the appeal is subject to dismissal based on the absence of a reporter's transcript or an agreed or settled statement. Next, we review appellants' claim that the court's orders deprived them of due process. We then consider in turn each of the arguments raised by Flannery[7] to the

---

[5] Based on our review of appellants' appendix, it appears that Daneshrad did not file an opposition to any of the three motions.

[6] We will refer to Flannery and Daneshrad together as appellants, unless the context requires us to refer to them individually.

[7] Because Daneshrad did not file any opposition to the motions and no reporter's transcript was provided on appeal,

6

orders granting the motions filed by the Gas Co., Murray, and Tepper.

## Effect of Appellants' Failure to Include a Reporter's Transcript or a Suitable Substitute

Appellants challenge orders made after a lengthy hearing at which no court reporter was present.  The record on appeal does not include a settled statement or agreed statement as authorized by California Rules of Court, rules 8.134 and 8.137.

"[I]t is appellant's burden to provide a reporter's transcript if 'an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court . . .' (Cal. Rules of Court, rule 8.120(b)), and it is the appellant who in the first instance may elect to proceed without a reporter's transcript (Cal. Rules of Court, rule 8.130(a)(4)) . . . ." (*Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1034, fn. 5.)  A reporter's transcript may not be necessary if the appeal involves legal issues requiring de novo review.  (See, e.g., *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 698–700 [transcript not necessary for de novo review of order granting an anti-SLAPP motions].)  In many cases involving the substantial evidence or abuse of discretion standard of review, however, a reporter's transcript or an agreed or settled statement of the proceedings will be indispensable. (See, e.g., *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [declining to review the adequacy of an award of damages absent a transcript

---

we conclude Daneshrad has waived all arguments against the motions.  (See *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117 [a party who fails to raise an issue in the trial court waives the right to do so on appeal].)

or settled statement of the damages portion of a jury trial]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447–448 ["The absence of a record concerning what actually occurred at the trial precludes a determination that the trial court abused its discretion"] (*Vo*).)

We proceed to consider the issues raised on appeal, cognizant of appellants' obligation to provide an adequate record to demonstrate error as well as our obligation to presume that the decision of the trial court is correct absent a showing of error on the record. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140–1141 (*Ketchum*).)

## Appellants' Due Process Claim

Appellants contend the trial court violated due process by granting respondents' motions without a trial or a summary judgment motion. Because appellants failed to put their own claims at issue in compliance with the statutes governing interpleader actions, they cannot now complain that they were deprived of a right to a trial.

When an interpleader defendant elects to file an answer or cross-complaint under subdivision (d) of section 386,[8] the

---

[8] The relevant text states: "A defendant named in a complaint to compel conflicting claimants to interplead and litigate their claims . . . may, in lieu of or in addition to any other pleading, file an answer to the complaint or cross-complaint which shall be served upon all other parties to the action and which shall contain allegations of fact as to his ownership of or other interest in the amount or property and any affirmative defenses and relief requested. The

8

pleading must "contain allegations of fact as to either [defendant's] ownership of or other interest in the amount or property" interpleaded. Subdivision (e)[9] of the same section states that conflicting claims to funds "shall be deemed issues triable by the court," and if the amounts claimed exceed the amount on deposit, "any issues of fact involved in determining whether there is a deficiency . . . shall be tried by the court or a jury . . . ."

Appellants filed their answers belatedly.[10] The answers were insufficient to place their claims to the interpleaded funds

---

allegations in such answer shall be deemed denied by all other parties to the action, unless otherwise admitted in the pleadings." (§ 386, subd. (d).)

[9] The relevant text states: "Except in cases where by the law a right to a jury trial is now given, conflicting claims to funds or property or the value thereof so deposited or delivered shall be deemed issues triable by the court, and such issues may be first tried. In the event the amount deposited shall be less than the amount claimed to be due by one or more of the conflicting claimants thereto, . . . , any issues of fact involved in determining whether there is a deficiency in such deposit or delivery shall be tried by the court or a jury . . . ." (§ 386, subd. (e).)

[10] To provide some context, the Gas Co. filed its interpleader complaint on March 15, 2013, the trial court denied Flannery's anti-SLAPP motion on May 17, 2013, and remittitur issued following Flannery's first appeal on April 30, 2015. Appellants did not file their answers until August 28, 2015, three months after the Gas Co. filed its motion for

9

at issue before the court.  First, both appellants' answers contained a general denial of the allegations of the interpleader complaint.  The general denials in effect *denied* the Gas Co.'s allegations that appellants "each claim an interest in some or all of the same settlement proceeds to which [Tepper] claim[s] an interest" and that "other defendants claim an interest to all or some of any settlement proceeds payable to Mr. Flannery under the Confidential Settlement Agreement."  Next, appellants' answers are legally inadequate to state a conflicting claim to the interpleader funds because they are devoid of any factual specificity.  (*Interior Systems, Inc. v. Del E. Webb Corp.* (1981) 121 Cal.App.3d 312, 316 ["conclusionary [*sic*] allegations without facts to support them are ambiguous and may be disregarded"].)  Flannery's answer purports to state his claim in a single sentence:  "Flannery claims that the entire amount of the interpleader funds deposited with the court belongs to him as provided for in the Settlement Agreement."  Similarly, Daneshrad's purported claim states, "Daneshrad claims the sum of $1,960,000.00 up to date and continuing for legal services rendered to [Flannery] pursuant to a contractual lien with Flannery."

On this record, particularly where the sum total of the court's awards to the Gas Co., Murray, and Tepper was less than the amount of funds deposited with the court, appellants cannot demonstrate that they were entitled to have their claims decided by trial or summary judgment motion.  With no reporter's transcript in the record, we presume that Flannery had the opportunity to present evidence at the hearing on September 10,

---

attorney fees, three weeks after Murray filed her motion, and over two weeks after Tepper filed his motion.

2015, and waived any objection to the court proceeding on the parties' declarations and exhibits alone.  (*Vo*, *supra*, 79 Cal.App.4th at pp. 447–448 [affirming judgment in absence of reporter's transcript on the grounds that the lower court's judgment is presumed correct, and all intendments and presumptions are indulged to support the judgment].)

## Attorney Fee Award to the Gas Co.

*Relevant Facts and Procedure*

In May 2013, the trial court granted the Gas Co.'s motion for discharge and awarded $81,053.44 for costs and reasonable attorney fees.  In May 2015, after we remanded the Interpleader Case following Flannery's first appeal, the Gas Co. filed a renewed motion seeking additional attorney fees and costs incurred after May 8, 2013.  Flannery opposed the Gas Co.'s motion, arguing neither section 386.6 nor section 425.16 authorizes an award of attorney fees.  On September 11, 2015, the court granted the Gas Co.'s motion, awarding $169,983.13 in fees and costs incurred since May 8, 2013.

*Analysis*

Flannery contends section 386.6, subdivision (a), only permits the court to award attorney fees incurred until the party is discharged, and therefore the trial court erred in granting the Gas Co.'s motion for additional attorney fees and costs incurred after May 8, 2013.  We disagree.

11

A de novo standard of review applies to the question of whether statutory language authorizes an award of attorney fees and costs. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213–1214.) If a statute permits a party to obtain attorney fees and costs, the order granting or denying such an award is reviewed for abuse of discretion. (*Soni v. Wellmike Enterprise Co. Ltd.* (2014) 224 Cal.App.4th 1477, 1481.)

Section 386.6, subdivision (a), gives the trial court authority to award attorney fees to the Gas Co. for fees and costs incurred not only to initiate the Interpleader Case and obtain discharge, but also to defend against subsequent motions, writ petitions, and appeals attacking the validity of the interpleader complaint and discharge order. Flannery relies solely on the text of section 386.6, subdivision (a), and excerpts from *Canal Ins. Co. v. Tackett* (2004) 117 Cal.App.4th 239 (*Canal*) to argue that the statute only authorizes a court to award attorney fees to an interpleading party when it orders discharge, not at any later date. Section 386.6, subdivision (a),[11] permits the party initiating an interpleader action to request fees and costs

---

[11] The full text states: "A party to an action who follows the procedure set forth in Section 386 or 386.5 may insert in his motion, petition, complaint, or cross complaint a request for allowance of his costs and reasonable attorney fees incurred in such action. In ordering the discharge of such party, the court may, in its discretion, award such party his costs and reasonable attorney fees from the amount in dispute which has been deposited with the court. At the time of final judgment in the action the court may make such further provision for assumption of such costs and attorney fees by one or more of the adverse claimants as may appear proper." (§ 386.6, subd. (a).)

incurred "in such action."  The statutory text continues:  "In ordering the discharge of such party, the court may, in its discretion, award such party his costs and reasonable attorney fees from the amount in dispute which has been deposited with the court."  (§ 386.6, subd. (a).)  *Canal* involved an interpleading plaintiff who sought an award of attorney fees three months after the court had discharged plaintiff and allocated the interpleader funds among 14 claimants.  The appellate court held section 386.6 did not authorize a court to award fees to a party that had earlier opted to settle the case and forgo its request for fees, and then belatedly sought fees three months after the interpleaded funds had been allocated among the claimants.  (*Canal*, *supra*, at p. 244.)  The facts of *Canal* are fully distinguishable from the facts and procedural posture of the case before us.  Here, the lower court awarded the Gas Co. fees and costs incurred prior to discharge, but the Gas Co. subsequently incurred additional fees and costs in the interpleader action based on Flannery's decision to continue to challenge the validity of the action itself.  Case law recognizes that attorney fees, whether recoverable by contract or statute, "are available for services at trial *and* on appeal. [Citation.]"  (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 637, italics added [rejecting argument that no fees are recoverable for defending a fee award on appeal because the appeal did not independently meet the statutory requirements for a fee award]; see also *Ketchum*, *supra*, 24 Cal.4th at p. 1141 [the party litigating a matter tenaciously cannot complain about the time necessarily spent by the other party in response].)  We do not read the language of section 386.6 or the reasoning of *Canal* as mandating a departure from the usual rule that a party entitled

13

to attorney fees and costs by statute is also entitled to fees and costs incurred on appeal.

We therefore conclude section 386.6, subdivision (a), gives the court statutory authority to award the Gas Co. attorney fees and costs until the Gas Co. was fully and finally discharged from the proceeding, which includes defending the interpleader complaint and discharge order against subsequent motions, writ petitions, and appeals. (See *Lincoln Nat. Life Ins. Co. v. Mitchell* (1974) 41 Cal.App.3d 16, 20.) Because the court had authority to award fees under section 386.6, we need not consider whether section 425.16 provides an alternate basis for the award. To the extent Flannery challenges the amount of the award to the Gas Co., without a reporter's transcript, Flannery cannot demonstrate the trial court's award constituted an abuse of discretion.

## Monetary Award to Murray

*Relevant Facts and Procedure*

Judge Wiley ruled on motions in limine filed by Murray and Flannery in the Sesnon Fire Case on January 23, 2013, ordering that: "Murray and Flannery are parties to [the Palimony Case] in which Murray seeks a declaration of her ownership interest in the real property Murray and Flannery claim the Sesnon fire damaged. The respective ownership interests of Murray and Flannery in the subject property are not directly relevant to their claims of negligence against the Gas [Co.] Litigating the issue of the ownership interests of [Murray and Flannery] in this case is unnecessary, as [the Palimony Case] will resolve that dispute."

14

Murray, Flannery, and the Gas Co. later settled the Sesnon Fire Case. The settlement terms specified, "As between Ms. Murray and Mr. Flannery, the parties are not releasing each other of and from any and all claims that may exist between them, whether or not included in the pending lawsuits. And this settlement is without prejudice to either of their rights in those other lawsuits." Murray's attorney in the Palimony Case advised the Sesnon Fire Case settlement judge that he planned "on going to court in the [Palimony Case] and advising the court of this settlement because we intend to seek an injunction -- restraining order."

On February 28, 2013, Judge Rico issued an order in the Palimony Case requiring certain settlement proceeds from the Sesnon Fire Case be deposited in a trust account for the benefit of Murray and Flannery.

On February 24, 2014, Murray obtained a judgment in the Palimony Case awarding her $1,225,000, subject to attorney fees and costs (Palimony Judgment). The pertinent part of the Palimony Judgment declares Murray a 50 percent owner of the ranch property damaged in the fire at issue in the Sesnon Fire Case and recognizes that Murray and Flannery's property damage claims in the Sesnon Fire Case were settled in the amount of $2,450,000. The Palimony Judgment continues: "This settlement of $2,450,000 was deposited by [the Gas Co.] with the court in [the Interpleader Case]. [¶] As and for her share of the property damages claim in the [Sesnon Fire Case], [Flannery] shall pay to [Murray] the sum of $1,225,000, which amount is subject to any attorney fees and costs that may be assessed against this money as to be determined in the Interpleader [Case]. The court in the Interpleader [Case], shall release and

15

disburse from the funds being held in that action, the sum of $1,225,000 to [Murray] subject to attorney's fees and costs, if any to be determined as against [Murray's] share." On April 25, 2014, Flannery appealed the Palimony Judgment.[12]

While Flannery's appeal of the Palimony Judgment remained pending, Murray filed a motion in the Interpleader Case to collect the Palimony Judgment, seeking disbursement of $1,225,000 plus interest from the funds deposited by the Gas Co. Flannery's opposition argued that (1) the Palimony Judgment was stayed pending appeal, (2) Judge Wiley lacked jurisdiction to modify the settlement agreement reached in the Sesnon Fire Case, and (3) the Palimony Judgment was subject to an offset for attorney fees claimed by Tepper and Daneshrad. Murray's reply brief argued that (1) the Palimony Judgment was not stayed pending appeal because Flannery had not posted a bond or undertaking as required by section 917.2, (2) Judge Wiley had expressly granted Judge Rico, the judge presiding over the Palimony Case, authority to determine the division of any judgment or settlement in the Sesnon Fire Case as between Flannery and Murray, and (3) any claim for attorney fees regarding Murray's Palimony Judgment had been resolved.

After a hearing on September 10, 2015, Judge Wiley issued an order dated September 11, 2015, awarding Murray $1,225,000 from the interpleader funds, but denying her request for interest. Judge Wiley noted his prior January 23, 2013 order in the Sesnon Fire Case that the court in the Palimony Case "would determine the ownership split between Murray and Flannery" and adopted

---

[12] Appellants filed a request for judicial notice of the disposition of the Palimony Judgment on appeal. The request was denied on May 26, 2016.

16

the finding from the Palimony Case to award Flannery $1,225,000.  The September 11, 2015 order also addressed the provision in the Palimony Judgment making Murray's award subject to any attorney fees charged against Murray's share of the interpleaded funds.  Relying on Murray's declaration that she would resolve any fee obligations to her attorneys out of the award amount, the court extinguished any claims by Murray's attorneys, Tepper and Ardi, to the remaining funds on deposit with the court.  The trial court denied Murray's request for postjudgment interest, noting that the Palimony Judgment is "most fairly interpreted as a judgment for the personal property that is within this court's interpleader jurisdiction."  Finally, the court ruled that Murray is entitled to the funds immediately, rejecting Flannery's argument that the Palimony Judgment is stayed pending appeal.

*Analysis*

Flannery raises multiple contentions of error against the order awarding $1,225,000 of the interpleader funds to Murray, but none are persuasive.  First, the court correctly concluded the Palimony Judgment was not stayed pending appeal.  Second, Flannery cannot show the court that entered the Palimony Judgment lacked jurisdiction.  Third, Flannery fails to demonstrate the trial court abused its discretion in deferring to Murray's assurance that her attorneys will be paid from the award amount.  Fourth, there is no evidence—or even adequate factual allegations—to support Flannery's claim that Daneshrad's firm had a $1,960,000 lien that took priority over any distribution to Murray.

17

A.      *Stay of Palimony Judgment Pending Appeal*

Flannery contends the interpleader court lacked authority to grant Murray's motion because the Palimony Judgment was stayed pending appeal under section 916, subdivision (a).[13] Alternatively, Flannery argues that because the Palimony Judgment is a mandatory injunction, it was subject to an automatic stay on appeal.  Murray responds that the Palimony Judgment was enforceable because Flannery did not post an undertaking as required under section 917.2.  Murray is correct.

Under subdivision (a)(1) of section 917.1,[14] enforcement of a judgment for "[m]oney or the payment of money" is not stayed on appeal "[u]nless an undertaking is given."  Under section 917.2,[15]

---

[13] The relevant text states:  "Except as provided in Sections 917.1 to 917.9, inclusive, . . . the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order . . . ."  (§ 916, subd. (a).)

[14] The full text states:  "(a) Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for any of the following:  [¶]  (1) Money or the payment of money, whether consisting of a special fund or not, and whether payable by the appellant or another party to the action."  (§ 917.1, subd. (a)(1).)

[15] The full text states:  "The perfecting of an appeal shall not stay enforcement of the judgment or order of the

18

an appeal of a judgment for delivery of personal property does not stay enforcement of judgment "unless an undertaking in a sum and upon conditions fixed by the trial court, is given . . . ."

Flannery and Murray disagree about the impact of *McCallion v. Hibernia etc. Society* (1893) 98 Cal. 442 (*McCallion*) on the question of whether Flannery needed to post an undertaking to stay the Palimony Judgment on appeal. In *McCallion*, the court concluded that money held by the court in a

___

trial court if the judgment or order appealed from directs the assignment or delivery of personal property, including documents, whether by the appellant or another party to the action, or the sale of personal property upon the foreclosure of a mortgage, or other lien thereon, unless an undertaking in a sum and upon conditions fixed by the trial court, is given that the appellant or party ordered to assign or deliver the property will obey and satisfy the order of the reviewing court, and will not commit or suffer to be committed any damage to the property, and that if the judgment or order appealed from is affirmed, or the appeal is withdrawn or dismissed, the appellant shall pay the damage suffered to such property and the value of the use of such property for the period of the delay caused by the appeal. The appellant may cause the property to be placed in the custody of an officer designated by the court to abide the order of the reviewing court, and such fact shall be considered by the court in fixing the amount of the undertaking. If the judgment or order appealed from directs the sale of perishable property the trial court may order such property to be sold and the proceeds thereof to be deposited with the clerk of the trial court to abide the order of the reviewing court; such fact shall be considered by the court in fixing the amount of the undertaking." (§ 917.2.)

19

proceeding akin to an interpleader action constituted personal property within the meaning of former section 943, the predecessor to section 917.2. (*Id.* at p. 445.) Murray and the lower court relied on the *McCallion* court's reasoning that "when the money came into the possession of the court the litigation resolved itself essentially into an action to try the title to personal property" subject to the stay provisions applicable to judgments for delivery of personal property. (*Ibid.*) Flannery, on the other hand, focuses on the *McCallion* court's reliance on the former statutory language to conclude that no stay bond was required because "the fund was in the possession of the court, and such fact by the terms of the section itself does away with the requirement." (*Ibid.*)

In order to explain why current statutory language requires a bond to stay a judgment for identified funds already in the court's possession, we briefly review some relevant legislative history. When *McCallion* was decided in 1893, former section 943 provided that the execution of a judgment or order for assignment or delivery of personal property "cannot be stayed by appeal, *unless the things required to be assigned or delivered be placed in the custody of such officer or receiver as the court may appoint*, or unless an undertaking be entered into . . . ." (Former § 943, Code Amends. 1880, ch. 18, § 1, p. 6 [Code Civ. Proc.], italics added.) In 1968, the Legislature recodified the statutory provisions for stays pending appeal, replacing former section 943 with section 917.2, but retaining language exempting from the bond requirement property placed in the court's custody.[16]

---

[16] The relevant text of former section 917.2 stated: "The perfecting of an appeal shall not stay enforcement of the judgment or order of the trial court if the judgment or

20

(Stats. 1968, ch. 385, §§ 1–2, pp. 816–820.)  In 1972, the Legislature eliminated the exception relied upon by the *McCallion* court, so section 917.2 currently states in relevant part:  "The perfecting of an appeal shall not stay enforcement of the judgment or order of the trial court if the judgment or order appealed from directs the assignment or delivery of personal property . . . unless an undertaking in a sum and upon conditions fixed by the trial court, is given . . . ."  The reference to funds deposited with the court, historically part of section 917.2, now appears in section 917.1, subdivision (b),[17] and provides that in

---

order appealed from directs the assignment or delivery of personal property . . . *unless the property is placed in the custody of an officer designated by the trial court to abide the order of the reviewing court* or an undertaking in a sum and upon conditions fixed by the trial court, is given . . . ."  (Stats. 1968, ch. 385, § 2, p. 817, italics added.)

[17] The full text states:  "The undertaking shall be on condition that if the judgment or order or any part of it is affirmed or the appeal is withdrawn or dismissed, the party ordered to pay shall pay the amount of the judgment or order, or the part of it as to which the judgment or order is affirmed, as entered after the receipt of the remittitur, together with any interest which may have accrued pending the appeal and entry of the remittitur, and costs which may be awarded against the appellant on appeal.  This section shall not apply in cases where the money to be paid is in the actual or constructive custody of the court; and such cases shall be governed, instead, by the provisions of Section 917.2.  The undertaking shall be for double the amount of the judgment or order unless given by an admitted surety insurer in which event it shall be for one and one-half times the amount of the judgment or order.  The liability on the

21

"cases where the money to be paid is in the actual or constructive custody of the court; . . . such cases shall be governed, instead, by the provisions of Section 917.2."

Based on the amendments to statutory language since the time *McCallion* was decided, we conclude that the Palimony Judgment was a judgment for delivery of personal property governed by section 917.2.[18] Because Flannery did not seek an order from Judge Rico fixing the amount for an undertaking, Flannery's appeal did not stay enforcement of the Palimony Judgment.

B. *Jurisdiction to Determine Division of Ownership of Property at Issue in the Sesnon Fire Case*

Flannery contends the Palimony Judgment is void because the Palimony Case court (Judge Rico) lacked jurisdiction to declare the rights of parties in the Sesnon Fire Case. His argument rests on the fact that the settlement judge dismissed the Sesnon Fire Case under section 664.6, retaining jurisdiction only to enforce the terms of the settlement. However, the settlement and dismissal of the Sesnon Fire Case did not resolve the ongoing dispute between Murray and Flannery regarding

---

undertaking may be enforced if the party ordered to pay does not make the payment within 30 days after the filing of the remittitur from the reviewing court." (§ 917.1, subd. (b).)

[18] Having determined that the Palimony Judgment is a judgment directing the delivery of personal property, which is governed by section 917.2, we reject Flannery's argument that the Palimony Judgment is a mandatory injunction subject to an automatic stay on appeal.

22

their respective ownership interests in the fire-damaged property, and therefore their respective claims to the Settlement Funds. The parties to the Sesnon Fire Case were well aware that there was ongoing litigation between Murray and Flannery and that Judge Wiley had deferred those questions to Judge Rico when he ruled on Murray and Flannery's motions in limine on January 23, 2013. The Settlement Agreement expressly reserved those claims by stating, "As between Ms. Murray and Mr. Flannery, the parties are not releasing each other of and from any and all claims that may exist between them, whether or not included in the pending lawsuits. And this settlement is without prejudice to either of their rights in those other lawsuits."

Having entered into a settlement agreement that expressly reserved Murray's claims against him, Flannery cannot now claim that the court tasked with resolving those claims somehow lacked jurisdiction to do so.

C. *Offset of Attorney Fees*

Flannery also contends the trial court erroneously failed to offset attorney fees against the $1,225,000 disbursement as contemplated by the Palimony Judgment. Flannery does not provide any legal authority to support his argument, nor does he specify what standard of review should apply. Nevertheless, we glean from appellants' opening brief that Flannery is unhappy that the court ordered the full $1,225,000 to Murray without deducting fees owed to Tepper or to Daneshrad. One problem with the argument is that Tepper is apparently satisfied with the judgment, as he has not appealed, and Flannery has no standing to make an argument for him. A greater folly in this argument is

that the court's decision on whether or not to award fees to Tepper or Daneshrad is subject to an abuse of discretion standard of review. "A request for an award of attorney fees is entrusted to the trial court's discretion and will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 577.) Because Flannery cannot show the court abused its discretion in extinguishing Tepper's claim to additional fees based on his representation of Murray and in impliedly denying Daneshrad's claim for fees, we find no error.

### D. *Daneshrad's Fee Lien*

Finally, Flannery contends the court erred when it disregarded the priority of Daneshrad's attorney fee lien and instead disbursed half of the funds on deposit to Murray. As discussed earlier in this opinion, the record does not establish that Daneshrad ever made a claim on the interpleaded funds, and so Flannery's contentions are unwarranted. "A lien in favor of an attorney upon the proceeds of a prospective judgment *in favor of his client* for legal services rendered . . . may be created either by express contract . . . [citations] or it may be implied if the retainer agreement between the lawyer and client indicates that the former is to look to the judgment for payment of his fee [citations]." (*Cetenko v. United California Bank* (1982) 30 Cal.3d 528, 531, italics added (*Cetenko*).) Even if Daneshrad had filed a sufficient answer, there is no evidence in the record on appeal demonstrating a contractual relationship between Murray and Daneshrad. Accordingly, Daneshrad's lien would only apply to

24

any amount awarded to Flannery, and the court's judgment reflects that fact.

## Monetary Award to Tepper

*Relevant Facts and Procedure*

Tepper represented Flannery and Murray jointly in the Sesnon Fire Case until the fall of 2010, when Ardi substituted in as Murray's counsel. In June 2012, Tepper sought to withdraw from his role as Flannery's attorney, based on Tepper's recent diagnosis with advanced prostate cancer, ethical conflicts relating to Flannery's insistence on untruthful testimony, and Flannery's refusal to advance expert witness fees. Ultimately, Daneshrad substituted in as Flannery's new counsel on June 13, 2012.

On August 12, 2015, Tepper filed a motion for attorney fees and costs seeking a disbursement of $793,785.06 from the interpleaded funds. Flannery's opposition argued (1) Tepper could not recover on his fee lien without first filing a separate lawsuit against Flannery, (2) Tepper is not entitled to any fees because he voluntarily withdrew from the case, and (3) Tepper inflated his fees and was double billing by seeking compensation from both Flannery and Murray.

After the September 10, 2015 hearing, the court awarded Tepper $512,295. The court deducted (1) any time claimed but not reflected in Tepper's billing records and (2) half the time claimed for the period when Tepper was representing both Murray and Flannery. The court also used an hourly rate of $500, rather than the $650 hourly rate claimed by Tepper. Using the new hourly rate and the reduced time, the court applied a

25

multiplier of 1.5 based on the contingent nature of the fee agreement, which reflects a risk of non-recovery and a delay in payment.

*Analysis*

A.    *Interpleader Case Satisfies the "Separate, Independent Action" Requirement for Enforcement of an Attorney Fee Lien*

Flannery contends the court erred in awarding attorney fees and costs to Tepper because Tepper did not establish the existence and amount of his lien in an independent action. We reject this contention because the Interpleader Case satisfies the requirement that an attorney must file a separate, independent action in order to enforce a fee lien.

"A lien in favor of an attorney upon the proceeds of a prospective judgment in favor of his client for legal services rendered has been recognized in numerous cases." (*Cetenko*, *supra*, 30 Cal.3d at p. 531.) "In California, an attorney's lien is created only by contract—either by an express provision in the attorney fee contract [citations] or by implication where the retainer agreement provides that the attorney is to look to the judgment for payment for legal services rendered [citations]." (*Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1172, fn. omitted (*Carroll*).) For liens created in a contingency fee contract, a cause of action to enforce the lien "does not accrue until the occurrence of the stated contingency." (*Fracasse v. Brent* (1972) 6 Cal.3d 784, 792.) The attorney's lien survives even after discharge, although the attorney's recovery is limited to the

26

reasonable value of services actually performed (i.e., quantum meruit), rather than the full percentage specified in the contract. (*Id.* at p. 786; *Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 598 ["where an attorney has been discharged (with or without cause) by a client with whom the attorney had a contingent fee agreement, upon occurrence of the contingency specified in the agreement, the attorney is limited to a quantum meruit recovery for the reasonable value of his services rendered to the time of discharge"].)

"Unlike a judgment creditor's lien, which is created when the notice of lien is filed [citation], an attorney's lien is a 'secret' lien; it is created and the attorney's security interest is protected even without a notice of lien. [Citations.]" (*Carroll*, *supra*, 99 Cal.App.4th at p. 1172.) Still, it is "permissible, and even advisable," for an attorney to file a notice of lien in the underlying action, meaning the action where the attorney is the client's attorney of record or—in the case of an attorney who has been discharged—where the attorney previously represented the client. (*Valenta v. Regents of University of California* (1991) 231 Cal.App.3d 1465, 1470 (*Valenta*) [discharged attorney filed a notice of lien in the underlying action, an action by plaintiff Valenta against defendant university for wrongful termination; court lacked jurisdiction to either affirm or terminate the lien].)

It is well recognized that, regardless of whether an attorney files a notice of lien, the court deciding the underlying action lacks jurisdiction to decide the existence or validity of the attorney's lien claim on the underlying judgment. (See, e.g., *Brown v. Superior Court* (2004) 116 Cal.App.4th 320, 328–329 (*Brown*) ["the trial court in the [underlying] action had no authority to determine the existence or validity of [the attorney's]

claimed lien on the proceeds of the [underlying] judgment"]; *Carroll, supra*, 99 Cal.App.4th at p. 1172 ["[a]ppellate courts have consistently held that the trial court in the underlying action has no jurisdiction to determine the existence or validity of an attorney's lien on the judgment"]; *Valenta, supra*, 231 Cal.App.3d at p. 1470.)  The court in *Brown* explained the limitation "is founded on the fundamental principle 'that one who is not a party to a proceeding may not make a motion therein.' [Citation.]" (*Brown, supra*, at p. 329.)  Because an attorney is very unlikely to meet the criteria to intervene and become a party to the underlying action, "the fundamental rule is that the attorney is not a party to the client's action and cannot appear on his or her own behalf to seek any relief in that action, including enforcement of a contractual lien against the proceeds of the judgment.  (See *Hansen v. Jacobsen* (1986) 186 Cal.App.3d 350, 356 ['Because the discharged attorney is not a party to the pending action and may not intervene, the trial court has no jurisdiction to award fees to that attorney'].)" (*Brown, supra*, at p. 330.)  Because the attorney cannot intervene in the underlying action, "[a]fter the client obtains a judgment, the attorney must bring a *separate, independent action* against the client to establish the existence of the lien, to determine the amount of the lien, and to enforce it." (*Carroll, supra*, at p. 1173, italics added.)

The court in *Mojtahedi v. Vargas* (2014) 228 Cal.App.4th 974, 976 (*Mojtahedi*) took this principle one step further by requiring that the former client must be named as a party to the separate, independent action to establish the existence and validity of an attorney fee lien.  In *Mojtahedi*, the plaintiff was the clients' former attorney in a personal injury matter.  Their fee agreement included a lien provision.  The plaintiff represented

28

the clients for about eight months before the defendant substituted in as the clients' new attorney. The plaintiff informed the claims adjuster of his lien, and when the underlying action settled for $14,500, the check identified three payees: the clients, the plaintiff's law office, and the defendant's law office. The plaintiff sent the defendant a log of his time and demanded $4,407 in attorney fees. When the defendant offered the plaintiff a lower amount, the plaintiff filed suit against the defendant, among others, but not his former clients. (*Ibid*.) The *Mojtahedi* court concluded that without bringing a separate action against the clients, a former attorney cannot establish "the existence, amount, and enforceability of his lien" on settlement funds. (*Id.* at p. 979.) The court's reasoning focused on the significance of the plaintiff's choice not to name his former clients as a party. The court noted that the plaintiff's time log would be "useful to adjudicate the reasonable value of plaintiff's services in a separate action *against the clients*," but it was insufficient to state a claim against the successor attorney. (*Id.* at p. 978, italics added.) It went on to emphasize "the attorney's lien is only enforceable after the attorney adjudicates the value and validity of the lien in a separate action against his client." (*Ibid*.)

Flannery argues the lower court lacked authority to grant Tepper's motion for attorney fees because Tepper never filed an independent action against Flannery adjudicating the existence, value, and enforceability of his lien. This argument is misguided because Flannery's answer to the interpleader complaint was sufficient to place the existence, value, and enforceability of his lien at issue as against Flannery. The "underlying action" was the Sesnon Fire Case, and the Interpleader Case is not only the separate, independent action referred to in case law governing

29

attorney liens, it is the correct proceeding in which to determine the existence, value, and enforceability of Tepper's lien as against Flannery.

Flannery attempts to compare Tepper's motion to plaintiff's lawsuit in *Mojtahedi*: "Just like Mojtahedi who had filed a claim against the settlement proceeds held by successor attorney, the Tepper Firm has filed a claim against the settlement proceeds held by the court." This argument ignores the crucial fact that Flannery is a party to the interpleader case, while the clients in *Mojtahedi* were not. Tepper's March 25, 2013 answer alleged facts to support his claim for payment as against the other named defendants in the interpleader action, including Flannery. Taken together, Tepper's answer and motion for attorney fees and costs are the equivalent of a complaint seeking a determination of the value and enforceability of Tepper's lien for attorney fees and costs advanced to Flannery in the Sesnon Fire Case, as well as payment of the lien amount.

### B.  *Factual Findings Did Not Violate Due Process*

Flannery further contends the court's factual finding that Tepper withdrew involuntarily and for good cause violated due process because it deprived Flannery of the opportunity to conduct discovery and present evidence to refute Tepper's declaration. Because this argument appears to be distinct from the overall due process argument discussed earlier in this opinion, we address it separately.

An attorney who withdraws from representing a client for good cause, including adherence to ethical rules, is entitled to a quantum meruit recovery of fees. (*Estate of Falco* (1987) 188

30

Cal.App.3d 1004, 1015.)  Tepper's motion was supported by a declaration and exhibits demonstrating that he was ethically required to withdraw from representing Flannery for three reasons:  (1) Tepper had been diagnosed with advanced prostate cancer and was scheduled to undergo surgery and radiation; (2) Tepper was ethically prohibited from following Flannery's instruction to use testimony Tepper knew to be untruthful; and (3) Flannery had breached the retainer agreement by refusing to advance anticipated expert witness fees.

Flannery opposed the motion, claiming Tepper could not show justifiable cause for voluntarily withdrawing as Flannery's attorney.  Without a reporter's transcript, however, we accept the representations in the court's September 11, 2015 order that "Flannery does not rebut or contest" evidence that "Tepper ethically could not present a case founded on lies, as his client was demanding.  Flannery also refused to advance the cost of expert witness fees in violation of Flannery's retention agreement with Tepper."  The court also noted evidence of Tepper's "debilitating cancer treatment" was likewise uncontested.  Absent any evidence in the record that the court abused its discretion in making its factual findings, Flannery's due process claim must fail.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Southern California Gas Company, Scott Tepper, Garfield & Tepper, and Andrea L. Murray.

31

KRIEGLER, Acting P.J.

We concur:


BAKER, J.                    KUMAR, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.