Filed 8/26/20  Lunger v. Zvik CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b) . This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| YAAKOV LUNGER,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>NICKI ZVIK et al.,<br><br>　　Defendants and Appellants. | B289552<br><br>(Los Angeles County<br>Super. Ct. No. BC524165) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Marc Marmaro, Judge. Affirmed.

Green Solar Technologies, Inc., Ken I. Ito; Benedon & Serlin, Gerald M. Serlin and Melinda W. Ebelhar, for Defendants and Appellants.

Myers, Widders, Gibson, Jones & Feingold, Dennis Neil Jones and Eric R. Reed; Law Offices of Natan Davoodi and Natan Davoodi, for Plaintiff and Respondent.

Nicki Zvik (Zvik) and Green Solar Technologies, Inc. (Green Solar) appeal from a judgment entered against them following a bench trial held to decide whether Zvik acted as an unlicensed contractor. Zvik did not testify at the trial because he invoked his Fifth Amendment right to remain silent in light of a pending prosecution against him in Riverside County. We are asked to decide whether the trial court abused its discretion in deciding to proceed with the civil trial after repeated postponements of the trial date (totaling nine months), largely to accommodate Zvik's request to try and conclude the criminal proceedings first.

## I. BACKGROUND

Yaakov Lunger (Lunger) contracted with Zvik, who signed on behalf of two predecessor entities to Green Solar, to renovate Lunger's home. In executing the contracts, Zvik told Lunger he was a fully licensed, bonded, and insured contractor. As later found by the trial court in this case, that was not true: Zvik's contracting licenses had been revoked and he was "renting" a contracting license from another party. When a dispute subsequently arose between Lunger and Zvik before the house renovation work was completed, Lunger sued Zvik and predecessor entities to Green Solar on breach of contract, negligence, and statutory theories of liability.

In October 2016, more than three years after Lunger filed his complaint and with discovery in the case complete, Zvik applied ex parte for an order continuing the trial, which was set to begin the following day (after having first been set in March 2015 and continued several times). Zvik argued a continuance was necessary because he would not be able to appear at the trial due to an unidentified "emergency that could not have been

2

anticipated or avoided." The application was supported by a declaration from Zvik's attorney who offered to disclose the details of the "emergency" to the trial court in camera.

Lunger opposed the continuance request and revealed what he believed to be the nature of the emergency, namely, that Zvik had been arrested by authorities in Riverside County for contracting without a license and fraudulently using a contractor's license number. Lunger argued the equities favored proceeding with the civil trial, notwithstanding the criminal prosecution, because his case had been pending for three years and he and his family had been living in what he described as a half-finished house for even longer.

The appellate record does not include a reporter's transcript of the hearing on Zvik's application for a continuance. But the record does reveal the trial court initially agreed to stay the civil proceedings for a few weeks until Zvik made an appearance in the criminal case—and later imposed a stay that lasted nearly five-months.

By March 2017, the criminal case against Zvik remained pending and the stay of the civil case was still in place. The parties in the civil case appeared in court, and the appellate record does not include a reporter's transcript memorializing what was said. We do know from the record, however, that the trial court lifted the stay and set a new trial date five months out, in August 2017.

On August 2, 2017, the day of the final status conference before the scheduled trial date, Zvik filed an ex parte application to stay the proceedings for 60 days. Zvik told the court he thought the criminal case against him would be resolved within that time and he argued the resolution of the criminal case would

3

dispense with an asserted need to invoke his privilege against self-incrimination, which would permit him to testify in the civil case. Zvik's application was not supported by a declaration from his criminal defense attorney or documents from the pending criminal case. Rather, it was accompanied only by a declaration from Zvik's attorney in the civil case who, on information and belief, represented the criminal action involved either "virtually identical" or the "exact" same allegations against Zvik as were pending in Lunger's civil lawsuit.

Lunger opposed Zvik's application for a further stay and argued it was merely a reprise of his earlier request for a continuance that the court had denied. Lunger maintained, as he had when asking the court to lift the earlier stay, that the balance of equities favored moving forward with the trial without further delay.

The trial court denied Zvik's ex parte application for a stay the same day it was filed; the record again includes no reporter's transcript of the hearing on the application. Trial commenced days later on August 8, 2017. Before presenting evidence, the parties agreed Zvik could invoke his privilege against self-incrimination without need to take the witness stand and assert the privilege in response to question after question.

After four days of testimony, the trial court continued the trial for five weeks to accommodate the court's calendar, a pre-planned vacation for Lunger's counsel, the trial schedule of Zvik's counsel, and a request by Zvik to set the date to resume trial after the preliminary hearing in the criminal case (at which Zvik might enter a plea pursuant to a plea bargain). The trial court said it was "not altering" its prior ruling denying Zvik's

4

application for a 60-day stay and was instead acquiescing to a "modest" accommodation that the court found to be "reasonable."

When trial resumed on September 18, 2017, Zvik's counsel again asked for a temporary stay of the proceedings because the criminal case still had not resolved.[1] The trial court rejected the renewed request and explained its reasoning: "I've considered this issue. It's discretionary what I do in a case of a Fifth Amendment situation. It's a question of balancing what's best for all the parties in the case. I did continue it on a number of occasions to allow t[he criminal matter] to come to [a] conclusion, and I granted yet another continuance to get us past the [preliminary hearing] date in September. So I think I've dealt with it[,] considered all the factors that weigh one way or the other and concluded that this case should be tried."

On the merits of the dispute, the trial court ultimately issued a judgment in favor of Lunger, awarding him a total of $232,423.54 in damages, disgorgement, and prejudgment

---

[1] Zvik's civil attorney told the trial court that the lawyer representing Zvik in the criminal case was travelling to the courthouse and could answer any questions the court might have about the criminal proceedings. The trial judge told the lawyer he had a "right to be heard" and advised "[i]f there is new information that you think should alter my thinking, I'll hear from you on it." Zvik's criminal attorney provided no information about the posture of the criminal case against Zvik even though Zvik, by that time, had pled guilty to some of the charges against him and a sentencing hearing had been scheduled. Instead, the criminal attorney and the court discussed whether Zvik would have to invoke the Fifth Amendment privilege on a question by question basis and ultimately agreed he would not.

5

interest, $12,418.58 in costs, and $248,547 in attorney fees, plus post-judgment interest.

## II. DISCUSSION

The trial court did not abuse its discretion in rejecting Zvik's request for a further continuance of the trial date.[2] The trial court understood it needed to make an effort to accommodate the interests of both sides—of Lunger's interest in obtaining reasonably prompt redress of the alleged wrongs and disgorgement of the money he paid Zvik for unlicensed work, and of Zvik's interest in participating in the civil proceedings without possibly compromising his criminal defense. As we shall explain, the court did just that. The court responsibly exercised its discretion on the information it had by repeatedly continuing the trial date for a substantial length of time as requested by Zvik while ultimately drawing a line and denying further continuances as requested by Lunger.

Our Supreme Court has long recognized that a trial court must balance competing interests when a defendant in a civil

---

[2] There were many requests for continuances or stays of the civil proceedings. Zvik's opening brief would benefit from greater clarity, but a sentence on page 23 indicates he challenges "[t]he trial court's refusal to continue the civil trial on August 2, 2017 [citation] or September 18, 2017 [citation] . . . ." We shall only address the merits of the challenge to the September 2017 ruling. The record includes no reporter's transcript of the August 2017 hearing and we therefore cannot conclude the trial court's ruling at that time was an abuse of discretion. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; *Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483.)

6

action is also a defendant in a parallel criminal proceeding: "[T]roublesome is the plight of a defendant in a criminal prosecution who must also defend against civil proceedings involving the same facts. [¶] 'There may be cases where the requirement that a criminal defendant participate in a civil action, at peril of being denied some portion of his worldly goods, violates concepts of elementary fairness in view of the defendant's position in an inter-related criminal prosecution. On the other hand, the fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. The overall interest of the courts that justice be done may very well require that the compensation and remedy due a civil plaintiff should not be delayed (and possibly denied). The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side.' [Citation.]" (*People v. Coleman* (1975) 13 Cal.3d 867, 884-885.)

"'The decision whether to stay civil proceedings in the face of a parallel criminal proceeding should be made "in light of the particular circumstances and competing interests involved in the case." [Citation.] This means the decisionmaker should consider "the extent to which the defendant's fifth amendment rights are implicated." [Citation.] In addition, the decisionmaker should generally consider the following factors: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the

civil litigation; and (5) the interest of the public in the pending civil and criminal litigation. [Citation.]'" (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 885.) Owing in part to the difficulty in performing such a delicate task, we review a trial court's ruling using the deferential abuse of discretion standard of review. (*People v. Coleman*, *supra*, 13 Cal.3d at 884-885; accord, *Bains v. Moores* (2009) 172 Cal.App.4th 445, 480.)

In undertaking that review, Zvik faces an initial difficulty. A stay of civil proceedings in light of pending criminal proceedings is appropriate when the civil and criminal proceedings are not just concurrent but are "inter-related" and involve "the same facts." (*People v. Coleman*, *supra*, 13 Cal.3d at 884-885.) It is not clear from the appellate record, for which Zvik as the appellant seeking reversal is ultimately responsible, that the civil and criminal proceedings at issue here *were* interrelated or involved the same facts. The civil action was litigated in Los Angeles County, the criminal proceeding in Riverside. Records from the criminal proceeding that we have judicially noticed indicate there were multiple victims, none of whom is alleged to have been Lunger. The trial court was not given a written description or summary of the criminal proceedings (much less a copy of the criminal complaint), and furthermore, the court was not told during the hearing on September 18, 2017, that the Riverside criminal court had accepted Zvik's plea six days earlier.

Assuming for argument's sake, however, that the civil and criminal proceedings were sufficiently interrelated, the record establishes the trial court considered Lunger's interest in moving forward with the case. This was a significant consideration given the years that had elapsed from the filing of the lawsuit and the nearly $100,000 Lunger had already paid Zvik for unlicensed

work on what Lunger called a "half-finished house"—money that Lunger would be entitled to get back through the remedy of disgorgement. It is also clear the trial court gave great weight to Zvik's privilege against self-incrimination and his professed desire to testify in the civil case: the court repeatedly agreed to stays, continuances, and delays of trial,[3] and when the court ultimately refused to delay the case any further, it did so having no reason to be confident the criminal case would soon conclude. The court's weighing of these competing considerations, in combination with the court's own interest in efficiently managing its calendar and the public's interest in the orderly progress of court proceedings (especially in an unlicensed contractor case (see generally *Hydrotech Systems, Ltd. v. Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services])), was not an abuse of discretion.[4] (See, e.g., *Bains v. Moores*, *supra*, 172 Cal.App.4th at 480-482, 486 [trial court did not abuse its discretion in denying request for a stay where the case had been pending for years, stays had previously been granted, and the trial court could only speculate as to when the criminal matter would be resolved].)

---

[3] The court's acquiescence in these delays is quite significant because Zvik was at least partially in control of the timeline of the criminal case if he was willing to resolve the case by plea— which is eventually what occurred.

[4] Zvik has also not carried his burden to show the trial court's exercise of its discretion resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.) There was no proffer by Zvik's attorney in the trial court as to what Zvik's testimony would have been if he had felt free to testify.

DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.


We concur:


RUBIN, P. J.


KIM, J.

10